## LOWELL NEWSOM et al. *v.* J. A. COCKE et al.

1. OFFICES AND FRANCHISES—ANCIENT PROCEEDINGS TO TRY.—The ancient and appropriate proceeding to try and determine the right and title to all offices and franchises was under the writ of *quo warranto*.

2. SAME—PROCEEDINGS TO TRY THE RIGHT UNDER THE STATUTE.—By our statute regulating informations in the nature of a *quo warranto*, this old remedy is not only preserved, but rendered more convenient and expeditious, and is declared the appropriate proceeding to try the right to any office in this state, civil or military, or in. any county or town thereof. This, then, is, emphatically, the constitutional and proper mode of proceeding for the trial of title to offices.

3. CONSTITUTIONAL LAW—TEMPORARY PROVISIONS.—Art. 12, sec. 6 of the constitution of Mississippi is a provision temporary in its character, which will cease to be operative when all the departments of the government are organized and in operation.

4. TENURE OF OFFICE—POWER OF REMOVAL.—In the absence of all constitutional provision or statutory regulation, it would seem to be a sound and necessary rule to regard the power of removal as incident to the power of appointment.

5. STATUTES—CONSTRUCTION—PRESUMPTIONS.—In cases of doubt, every possible presumption will be made in favor of the constitutionality of the act in question; and courts will interfere only in cases of clear and unquestioned violation of the fundamental law. But where the violation of the constitution is clear, the argument *ab inconvenienti* will have but little weight. Sedgw. on Stat. and Con. Law, 482.

6. SAME—DOUBTS.—Where the meaning of a constitutional clause is doubtful, a statute alleged to be in violation with it must be held valid. 3 Serg. & Rawle, 63, 73.

7. TENURE OF OFFICE—COUNTY OFFICERS—REMOVAL.—All county officers, without exception, after their election by the qualified voters of the county, shall hold their respective offices until removed upon conviction under a presentment or indictment. Constitution, art. 5, § 21; ib., art. 6, § 26.

8. SAME—STATE AND DISTRICT OFFICERS.—The governor, lieutenant-governor, secretary of state, auditor of public accounts, state treasurer, attorney-general, and district-attorneys, when elected, are liable to removal by impeachment. The judges of the supreme and inferior courts may be removed from office either by impeachment or by the governor on joint address of two-thirds of each branch of the legislature.

9. SAME—TEMPORARY APPOINTEES.—No mode is pointed out in the constitution by which the appointees under art. 12, § 6, can be removed. The governor has the power to remove from office all district-attorneys and county officers until those officers have been elected by the people, when that power will cease and determine, and the incumbents of office will be thereafter only subject to removal in the mode and manner pointed out in the constitution.

Appeal from the chancery court of DeSoto county. SIM-MONS, J.

The facts appear in the opinion of the court.

*H. H. Chalmers* and *J. B. Morgan*, for appellants,

Contended, 1st. Injunction is the proper remedy in this case; citing Hilliard on Injunction (2d ed.), 386, ch. 22 47 Penn., 592; 43 ib., 372.

2d. The governor has no power to remove officers appointed by him under art. 12, § 6, Constitution; citing Const., art. 12, §§ 20, 21; Story on Const., § § 15, 43; 1 Kent, 308, § 16; Proceedings in Trial of Andrew Johnson, published in 1868, pages 680, 683; 1 Cranch, 162; 1 Curtis, 377; 13 Peters, 259; 13 Curtis, 138; 17 Howard, 283, 312; 21 Curtis, 517; 9 S. & M., 77; 5 ib., 632.

*Walter & Scruggs,* for appellees,

Contended the governor has the power to remove his appointees under the temporary constitutional provision, citing Constitution, art. 12, §§ 6, 7; art. 5, § 13; art. 6, §§ 20, 21; 1 Lloyd's Debates, 351, 356; 13 Penn., 230; Vattel's Law Nations, 252, 253; 6 How., 604; Sanders v. Columbus Life and Genl. In. Co.; Cooper v. Moore, both manuscript opinions at this term of the court; Sedgwick on Statutory and Constitutional Law, 338.

*Wm. Yerger,* on same side, argued the case orally.

Peyton, C. J.:

This was a bill filed by Lowell Newsom, George W. Mason, John Acree, D. E. Banks, Mary A. Stokes, A. W. Stokes, T. Y. Caffey, and Felix Labouve, against J. A. Cocke, Ephraim Bouldin, and Porter McKinney, in the chancery court of DeSoto county.

The bill alleges that the said Newsom, Acree, and Mason were appointed by the governor of this state, in the year 1870, members of the board of supervisors of said county, and were confirmed by the senate of said state; that they accepted said office and immediately entered upon the discharge of its duties, and so continued to the filing of this bill; that said Newsom, Acree, and Mason, together with John Scott and Francis Hill, constituted, and now constitute, the full board of supervisors for said county, and that that board has been duly organized, and in the full enjoyment of the powers and privileges of their said office; that said board contracted with Seabring and Lee for the building

of a court-house for said county, who entered into bond for the due performance of said contract, and the board obligated and bound the said county to pay them for said court-house the sum of $35,780. One-half of said sum was to be paid during the year 1870, as the work on said building progressed, and the balance to be paid on or before the 1st day of January, 1872.

The bill states that the said board of supervisors held a meeting on the 3d day of January, 1871, at which they levied a special court-house tax of one-fourth of one per cent. on the taxable property of said county, as contained in the assessment roll thereof duly made and on file in the office of the clerk of said board.

The bill further charges that the said Cocke, Bouldin, and McKinney, citizens of said county, are claiming to be members of the said board of supervisors, and that they have in their possession pretended commissions for said office, under which they are attempting to usurp the powers properly belonging to said board; that the said Cocke, Bouldin, and John Scott, called a meeting of the supervisors of said county on the 16th day of January, 1871, for the avowed purpose of making an order to revoke the order levying the special tax aforesaid; that the only legal members of said board are John Scott, Francis Hill, Lowell Newsom, George W. Mason, and John Acree, and that neither has resigned nor failed in any manner, or at any time, to perform the duties of the same; and that the said D. E. Banks, M. A. Stokes, A. W. Stokes, T. Y. Caffey, and F. Labouve, are citizens and tax payers of said county; and that their interests would be injuriously affected by the new burdens which would necessarily be imposed upon them by an increase of taxation to meet the loss to which the county would be liable in damages on account of a breach of her contract for the building of said court-house; therefore, the complainants ask that the said J. H. Cocke, Ephraim Bouldin, and Porter McKinney be enjoined from holding or attempting to hold any meeting as a board of supervisors of said county, and

that they particularly refrain from making any order to inter-
fere in any manner with the special court-house tax levied as
aforesaid, and that they be enjoined from exercising, or
attempting to exercise, any of the powers, or to perform any
of the duties of a board of supervisors of said county.
Whereupon an injunction was granted by the chancellor in
accordance with the prayer of the bill.

To this bill of complaint, the defendants filed a demurrer,
which was overruled by the court; and leave granted to them
to answer the bill.

Two of the defendants, Cocke and Bouldin, in their answer,
admit that the complainants, Lowell Newsom, George W.
Mason, and John Acree were, some time in the year 1870,
and before the month of December of that year, appointed
by the governor of this state, members of the board of super-
visors of the said county of DeSoto; but deny that they had
any legal right to hold said office from and after the 24th day
of December, 1870. They admit that the said Scott and Hill
were also members of said board, but deny that complain-
ants, Newsom, Acree, and Mason are legally in the enjoy-
ment of the powers and privileges of the said office, and in-
sist that the order made at the January term, 1871, levying
a special tax for building the court-house, was without author-
ity and void.

And the said defendants aver in their answer, that com-
plainants, Newsom, Acree and Mason were, in the month
of December, 1870, removed by the governor from their
offices as members of the board of supervisors for said county,
and that these respondents and their co-defendant, Porter
McKinney, were appointed in their place and stead, and these
respondents accepted said office, and were duly qualified as
such officers, and are now the legal members of said board
of supervisors as they are advised and believe; they admit
that they did, in connection with the said John Scott, pro-
pose to hold a meeting of said board for the purpose of re-
voking the said order, made on the 3d day of January, 1871,
levying said special court-house tax.

The defendant, Porter McKinney, in his separate answer to complainants' bill, says that he did not accept the commission from the governor, and disclaims all connection with this suit, and avers that he has no interest therein.

In vacation, upon legal notice to complainants, the defendants, on bill, answer and exhibits, moved the chancellor at chambers, to dissolve the injunction; which motion was sustained by the chancellor, and the injunction dissolved; and hence, the cause comes to this court by appeal on the part of the complainants, who assign for error the action of the chancellor in sustaining the motion and dissolving the injunction.

The ancient and appropriate proceeding to try and determine the right and title to all offices and franchises, was under the writ of *quo warranto;* and where a legal question was involved, this was the only mode of determining it; the applicant first established his title to the office, and then possession of the books and papers was enforced as a matter of course. By our statute regulating informations in the nature of a *quo warranto*, this old remedy is not only preserved, but rendered more expeditious and convenient; and is declared the appropriate proceeding to try the right to any office in this state, civil or military, or in any county or town thereof. Provision is made for the determination of issues of law and fact; and that the right of trial by jury so vital to the decision of the latter, is expressly maintained and declared. This, then, is emphatically the constitutional and proper mode of proceeding for the trial of title of offices. But as counsel seem to have waived all objections to the mode of procedure, adopted in the case at bar, and invoke the decision of this court on the question of the constitutionality of an act of the legislature, we will proceed to the consideration of the grave question presented for our adjudication; we approach this question with all the caution and solicitude its nature is calculated to inspire, and that intention of careful investigation its importance demands.

The constitution has wisely distributed the powers of government among the three departments thereof: The legisla-

tive, the executive and the judiciary, and neither of these is permitted to encroach upon the province of another; each revolves in its own orbit around that instrument, as the sun and center of our political system, and any deviation from it, by either of them, would mar the symmetry of the system and destroy the harmonious action of the government.

In passing from an abnormal government, to some extent under military, to a normal one under a written constitution, clearly defining and limiting the powers of government, we find in that instrument a provision, which was intended to be temporary in its nature and character, and which will cease to be operative, when all the departments of government are fully organized and in operation; and that provision is contained in the 6th section of the 12th article of the constitution, and is in the following language: "The term of office of all county, township and precinct officers, shall expire within thirty days after this constitution shall have been ratified, and the governor shall, by and with the advice and consent of the senate, thereafter appoint such officers, whose term of office shall continue until the legislature shall provide, by law, for an election of said officers; provided, the present incumbents of these offices shall hold their respective offices until their successors are legally appointed or elected, and duly qualified."

Doubts having been entertained by some, as to the power of the governor, under this section of the constitution, to remove his appointees to these offices, and appoint others in their stead, the legislature, to remove all doubt upon this subject, passed an act, approved April 20th, 1870, the first section of which provides that the governor shall be authorized and empowered to fill, by appointment, all vacancies that now exist, or that may hereafter occur in the public offices of any city, town, county or district of this state, or in any other public office not embraced expressly in the conveyance of the appointing power by the constitution; and that in all cases in which he shall have the power, under this act, by the terms of the constitution, to appoint to office, he shall

also have the power of removal from office ; and in the second section of said act, it is provided that all officers appointed under the provisions of this act, shall remain in office until the legislature shall provide by law for a general election in this state, unless sooner removed by the governor, under the provisions of this act.

It is admitted by the counsel on both sides that Lowell Newsom, George W. Mason, and John Acree, were appointed by the governor, some time before the first day of July, 1870, members of the board of supervisors of the county of De-Soto, and that they accepted the office, qualified and entered upon the discharge of their duties as such officers, and that on the 29th day of December, 1870, J. H. Cocke, Ephraim Bouldin, and Porter McKinney, were appointed by the governor, members of the board of supervisors of said county, in the place and stead of the · said Newsom, Mason, and Acree, and that the said Cocke and Bouldin accepted the offices and were duly qualified as such officers, and were entering upon the performance of the functions of said office when they were restrained therefrom by writ of injunction sued out at the instance of the said Newsom, Mason, and Acree and others, who insist that so much of said act of the legislature as authorizes the governor to remove incumbents from office, is unconstitutional and void.

It is contended by counsel for appellees, that the term of office for which the appellants, Newsom, Mason, and Acree were appointed, was not fixed and definite, and, therefore, the power of removal was incident to · that of appointment. It was once a vexed question whether the president of the United States had the right and power in any case to remove an incumbent from office, but it was well settled that, prior to the tenure of office act, where no tenure of office was prescribed by the constitution or laws of the United States, it was held at the pleasure of the appointing power, and that the power of removal in such cases, was incident to that of appointment; that the president, anterior to that act, possessed the power of removing all officers, civil and mili-

tary, except those in the judicial department, or where congress had given some other duration to their office. In the absence of all constitutional provision, or statutory regulation, it would seem to be a sound and necessary rule to regard the power of removal as incident to the power of appointment. This power of removal from office was a subject of much dispute, and upon which a great diversity of opinion was entertained in the early history of the federal government. This, however, related to the power of the president to remove officers appointed with the concurrence of the senate, and the great question was, whether the removal was to be by the president alone, or with the concurrence of the senate—both constituting the appointing power. No one denied the power of the president and senate jointly to remove where the tenure of office was not fixed by the constitution or act of congress. This was a full recognition of the principle, that the power of removal was incident to the power of appointment, in all such cases. But it was very early adopted as the practical construction of the constitution, that this power was vested in the president alone. And this doctrine has been recognized by the supreme court of the United States, in the case of *ex parte* Hennen, 13 Peters, 225, and acquiesced in by every department of the government from that time down to the administration of President Johnson, when the tenure of office act was passed by congress.

And upon reference to our present constitution, it will be seen that the 29th section of the first article provides that no person shall be elected or appointed to any office in this state, for life or during good behavior, but the term of all offices shall be for some specified period. This was evidently intended to limit the tenure of office to some certain, fixed and definite period, ascertained according to the divisions of time in the calendar, by days, weeks, months and years. This construction accords with the genius and spirit of our institutions, and is sustained by the various permanent provisions of the constitution.

The tenure of office of the judges of the supreme court is limited to nine years. The term of office of the governor, secretary of state, auditor of public accounts, state treasurer, attorney-general, district-attorneys, chancellors, senators, and clerks of the supreme, circuit and chancery courts, is respectively limited to four years, as is also that of the lieutenant-governor. The members of the house of representatives hold their office for two years. And all county officers, with the exceptions of the clerks of the circuit and chancery courts, will, after their temporary and provisional appointments shall have terminated by an election of these officers by the people, hold their respective offices for the term of two years, under the permanent provisions of the constitution.

With the view to the completed organization of the state government under the existing constitution, the 6th section of the 12th article above referred to, made it the imperative duty of the governor, after the expiration of thirty days after the ratification of the constitution, to appoint, by and with the advice and consent of the senate, all county officers throughout the state, in number between two and three thousand. This, it must be conceded by all, was a very arduous, high and responsible duty. It is his duty to see that the laws are faithfully executed, and the public interests require it. This can be effected only through the instrumentality of honest, capable, faithful and efficient officers. In the appointment of these officers, the governor had to rely as to their qualifications, upon information derived from others, and that information may not always have been correct, as subsequent developments, in some instances, have shown. Having to make so many appointments in a short period of time, it is not at all surprising that some of these various appointees should prove unworthy of the trust reposed in them. And it must be conceded that the corrective of the evils, which may result from any improper appointments, should rest somewhere. As these appointments were only provisional and temporary in their nature and

character, and no mode pointed out in the constitution for the removal of these temporary appointees, the legislature thought proper to confer that power upon the governor, and in doing so, we are not prepared to say that it was an assumption of legislative power not authorized by the constitution. This court would hesitate before it would declare the action of a co-ordinate department of the government, unconstitutional and void, unless it was clearly and undoubtedly so. For it is a wise and salutary rule in regard to judicial construction of constitutional provisions, that in csaes of doubt every possible presumption and intendment will be made in favor of the constitutionality of the act in question, and that the courts will interfere only in cases of clear and unquestioned violation of the fundamental law. But where, however, the violation of the constitution is clear, the argument *ab inconvenienti* should have but little weight. Sedgwick on Statutory and Constitutional Law, 482. The power of the courts of justice to declare the nullity of legislative acts which violate the provisions of the constitution, while it is undoubted, should be exercised with extreme caution, and never where a serious doubt exists as to the true interpretation of the provisions alleged to be repugnant. 26 Wend., 599; 5 Sandford, 10; 3 Scam., 238; 16 Mass., 245. And where the meaning of a constitutional clause is doubtful, a statute alleged to be in conflict with it must be held to be valid. 3 Serg. & Rawle., 63, 73. This is a safe and well recognized principle of judicial construction of constitutional provisions.

The 28th section of the 4th article of the constitution provides that the governor and all other civil officers in this state shall be liable to impeachment for treason, bribery, or any high crime or misdemeanor in office; and the 29th section requires a concurrence of two-thirds of all the senators present to convict; and the 30th section provides that, upon conviction, the judgment shall not extend further than removal from office, and disqualification to hold any office of honor, trust or profit under this state.

This mode of proceeding by impeachment, is by no means applicable to county officers. By the 26th section of article 6, it is provided that clerks, sheriffs, and other county officers, for willful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by grand jury and trial by petit jury, and upon conviction shall be removed from office. And this is the mode of removal contemplated in the 21st section of article 5, which provides that a sheriff, coroner, treasurer, assessor, and surveyor shall be elected in each county by the qualified electors thereof, who shall hold their offices for two years, unless sooner removed. All county officers, without exception, after their election by the qualifind voters of the county, shall hold their respective offices until removed upon conviction under a presentment or indictment.

The 22d section of said last mentioned article, in relation to the tenure of office, provides that all officers named in this article shall hold their offices during the term for which they were elected, unless removed by impeachment or otherwise. This provision can only apply to such officers as have been elected by the people, when the state government is fully organized, and all the permanent provisions of the constitution are in full operation; and cannot, with any propriety, be applied to district-attorneys and county officers, who have not yet been elected, but hold their offices by appointment under a temporary provision, which will cease to operate when these officers are elected by the people for the term of years defined and fixed by the constitution.

The terms "unless removed by impeachment, or otherwise," can have no application, as we have seen, to appointments to office under the 6th section of the 12th article of the constitution, and must be taken distributively. The governor, lieutenant-governor, secretary of state, auditor of public accounts, state treasurer, attorney-general, and district-attorneys, when elected, are liable to removal by impeachment, and the judges of the supreme and inferior courts may be removed from office, either by impeachment, or by the

governor, on the joint address of two-thirds of each branch of the legislature. And the term " otherwise, " in that connection, can mean only the mode of removal of county officers, prescribed in the 26th section of the 6th article of the constitution, by presentment or indictment. By this construction we avoid an apparent conflict, and make the different provisions of the constitution, upon this subject, harmonize.

We have said that there is no mode indicated by the constitution by which these provisional appointees can be removed from office; and this view of the subject is strengthened by the fact that some of them are not in the full exercise of the powers granted them in the constitution. As for instance, the board of supervisors cannot, until they and the other county officers shall have been elected by the qualified electors of the county, exercise their full jurisdiction. The 20th section of the 6th article of the constitution provides that said board shall have full jurisdiction over roads, ferries, and bridges, and shall order all county elections to fill vacancies that may arise in their county. No one, we presume, will contend that the board of supervisors have any power to order an election to fill any vacancy that may occur in their county, until after the county offices shall have been filled by an election by the people ; and any failure to do so, until after that event, would not subject them to a presentment or indictment by the grand jnry.

Hence, we conclude that the governor has the power to remove from office all district-attorneys and county officers, until those officers have been elected by the people, when that power will cease and determine, and the incumbents of office will be thereafter subjected to removal therefrom, only in the mode and manner pointed out in the constitution.

We think that the act in question, conferring the power of removal on the governor, with the limitation herein stated, is not unconstitutional, and that the chancellor did not, therefore, err in dissolving the injunction.

The decree must be affirmed.