## DECEMBER SPECIAL TERM, 1853.

### The State of Mississippi *v.* Smedes and Marshall.

The right to enact laws fixing the salaries or compensation of public officers, and to modify them in all cases, not prohibited by the constitution of this State or of the United States, so that they apply only to services thereafter to be rendered, vests exclusively in the legislature.

The provision in the constitution of the United States which says, that "no State shall pass any law impairing the obligation of contracts," was never understood to embrace other contracts than those which respect property or some object of value, and confer rights which may be asserted in a court of justice.

The salary or compensation of an officer is not of the description of contracts, the protection of which is provided for in the constitution.

On appeal from the superior court of chancery, Hon. Charles Scott, chancellor.

Smedes and Marshall filed their bill in the superior chancery court against the State of Mississippi, claiming $1,798 as due them, the late reporters of the decisions of the high court of errors and appeals, with interest on the same, until it was due. They allege in their bill that they were appointed by the court reporters some time in July, 1843, and under the statute they held their office for the period of four years from the date of their appointment. But in February, 1846, before their term of office had expired, the legislature passed an act reducing the pay of the reporters from four to three dollars per page, for as many pages as are contained in one copy of each volume of reports; and the auditor of public accounts refused to give them a warrant for more than three dollars per page for volumes six and seven of their reports, issued by them during their term of office.

The State filed a demurrer to the bill, which was overruled by the court below, and an appeal was then obtained by the State from that decree to this court.

*Glenn*, attorney-general, argued the case for the State.

*F. Anderson*, for appellees, contended the decision of the court below was correct, and cited *Buckingham* v. *Hughes*, 5 S. & M. 647; Acts of February, 1846, p. 243.

Mr. Justice FISHER delivered the opinion of the court.

The appellees were, about the first of July, 1843, appointed reporters of the decisions of the high court of errors and appeals, for the term of four years.

The statute of the 6th of February, 1841, Hutch. Code, 413, is as follows, to wit: "Hereafter the compensation of four dollars per page, for as many pages as are contained in one copy of each volume of the reports of the high court of errors and appeals, shall be allowed the reporter of said court, upon his depositing four hundred copies of each succeeding volume of said reports, neatly bound in calf and lettered, in the office of the secretary of state, as is now required by law." The act of 1846 reduces this compensation to three dollars per page for reports to be thereafter prepared. The act also contains the following proviso, to wit: "Provided, that this act shall not affect the fifth volume of Smedes & Marshall's Reports, now in press."

After the passage of this law, and before the expiration of their term of office, the appellees prepared, caused to be printed, and otherwise to be executed according to law, and deposited in the office of the secretary of state, the sixth volume of Smedes & Marshall's Reports. The manuscript of the seventh volume was also prepared during their said term; and the volume was in other respects afterwards executed and deposited with the secretary of state. For each of these volumes the reporters have received payment at three dollars per page, according to the provisions of the act of 1846.

The object sought by the bill is a decree against the State for the additional sum of one dollar per page, according to the stipulations of the act of 1841, the law in force regulating the compensation of the reporter at the time of the appellees' appointment.

The attorney-general, on behalf of the State, filed a demurrer to the bill, which was overruled by the chancellor; whence the cause comes into this court by appeal.

The counsel on the part of the appellees has argued that "the business of reporting was not only under the act of 1841 and preceding laws an office, but it was a contract by which the reporter was to be paid a stipulated sum for a stipulated amount of work;" that "the office, by law, could not be taken from the incumbent for the period of four years; and during that period he was entitled to do all the work of reporting at a stipulated price, which amounted to a contract with him to pay so much money for certain work;" that "the act of February, 1846, therefore, can only have a prospective action, and apply to reporters after the term of complainants expired."

The substance of these positions is this: That the act of 1841, the law in force regulating the compensation of the reporters at the date of the appellees' appointment, entered into and constituted an essential ingredient in their contract with the State in accepting the office; so much so that it was not in the power of the legislature, during their said term of office, to repeal or modify the law.

That the appellees had a vested right, in one sense, in the office, a right to hold it for the period of four years to the exclusion of every other person, and to receive its emoluments, may be admitted. But this falls far short of settling the question at issue, whether these emoluments were immutably fixed by the act of 1841, or only such as the legislature in its wisdom, having a due regard to services already performed, might from time to time prescribe. For it may be true that the appellees had a *vested right* in the office; and it may also be true, as argued by counsel, that the legislature would have no power, except by abolishing the office, to take it from the incumbents during their term, and yet be untrue that the legislature could not during this period modify or vary the compensation provided for in a previous law.

The distinction between the two questions is, that, in regard to the former, of a vested right in the office, the legislature would have no jurisdiction over the subject except in the man-

ner stated, to abolish the office itself.   The fact in such case to
be ascertained would be, whether the incumbents had done an
act which ought in law to result in a forfeiture of their office.
To adjudge and pronounce upon which would not, according
to the theory and structure of the government, fall legiti-
mately within the scope of legislative action.   The question, in
its very nature, would be one for judicial decision ; and whether
this decision should be made by one of the judicial tribunals of
the country or by the senate, it would nevertheless be a judicial,
and not a legislative sentence.

But how is it in regard to the other question, — of fees, sala-
ries, or compensation of public officers ?   The right to enact the
law on this subject in the first instance, and to modify it in all
cases, not prohibited by either the constitution of the State or
of the United States, so that it apply only to services there-
after to be rendered, rests exclusively with the legislature.   No
other department can exercise any jurisdiction whatever over
the subject, unless it be to enforce obedience to the law.

To test the correctness of the principle, then, we have only to
inquire, first, whether the subject is one falling exclusively un-
der the jurisdiction of the legislature.   And, secondly, whether
there is any thing in the state or federal.constitution, restrain-
ing legislative action in the particular case.   All must admit
the authority of the legislature over the subject.   Where, or in
what clause of the state constitution, then, are we to look for a
restraint upon the exercise of this authority in regard to the re-
porter of the decisions of the high court ?   None can be sug-
gested.   But it is said that the appellees are protected by that
clause in the constitution of the United States which says,
" That no State shall pass any law impairing the obligation of
contracts."   Here we have but one inquiry to make ; and that
is, whether their claim is a " contract " in the sense and mean-
ing of said clause.   On this subject it is only necessary to refer
to the elaborate and able opinion of the court in the Dartmouth
College Case, 4 Wheat. 518.   In that case the court said, " That
the framers of the constitution did not intend to restrain the
States in the regulation of their civil institutions, adopted for
internal government, and that the instrument they have given

Riggs *v.* The State of Mississippi.

us, is not to be so construed, may be admitted." "The provision in the constitution never has been understood to embrace other contracts, than those which respect property, or some object of value, and confer rights which may be asserted in a court of justice." The court throughout the whole opinion recognize the distinction between the character of contracts protected by the constitution, and those which in one sense exist between the State and her officers. The latter have never been held or thought to receive any protection whatever from the constitutional provision. They are not, in either a technical or ordinary sense, contracts. In all contracts there must be mutuality, — both parties must be bound. They can only be dissolved, discharged, or performance dispensed with by their terms, or by consent of parties. If officers were placed in this situation, it would be difficult to see how they could resign their offices when they desired to relinquish public trusts. The proposition is so plain, that it only appears to be necessary to state it, to show that an officer's salary, or compensation, is not of the description of contracts, the protection of which is provided for in the constitution.

We are therefore of opinion, that there is error in the decree, and that the same ought to be reversed.

Decree reversed, and bill dismissed.