## A. J. Hyde vs. The State ex rel.

1. Quo Warranto : *Tax collector.  Official bond.  Forfeiture of office.  Act of March 18, 1876.*

    Where a sheriff and tax collector qualifies himself for entering upon the duties of the office, by taking the oath and executing the bond required at the time, it is within the constitutional power of the legislature to require a new bond in a larger amount, and require the sureties on such bond to justify as to their sufficiency in a different manner from that prescribed by the statute at the time of the election and qualification, and also to prescribe, as a condition, that in case of failure to execute such new bond he shall forfeit the office.

2. Same :  Same : *How forfeiture declared.*

    Where a failure to qualify works a forfeiture of the office, *quo warranto* is the ancient and appropriate, and usually the exclusive, mode of procedure to judicially ascertain the fact and to oust from office an unlawful incumbent; and where the statute requires the board of supervisors to order an election in case of such forfeiture, this provision does not carry with it the power of judicially ascertaining the forfeiture and the necessity for the election, or if it did, still that would not preclude the state from resorting to her action of *quo warranto* upon the petition of the proper officer.

3. Same :  Same : *Term of office.  Holding over until successor is duly qualified.  State constitution, art. 12, § 22.*

    The provisions of our state constitution, permitting certain officers to hold for the term for which they are elected and until their successors are duly qualified, applies only to such officers as have filled out the full term, but not to such officers as have been adjudged to have forfeited their offices by the judgment of a court of competent jurisdiction.  The judgment will take effect from its rendition, and produce an instantaneous vacancy in the office.

4. Same :  Same : *An office is not a contract.  Constitutional prohibition.*

    An office is not a contract, and the incumbent is not protected in it by the prohibition of the federal constitution against the impairment of the obligation of contracts.  He has no such vested interest in the term, fees, salary, or duties as will prevent such legislation on these subjects as the public interests demand, provided the constitution is not infringed, and a person taking an office takes it subject to such regulations as the legislature may constitutionally enact.

5. Same :  Same : *Mode of removal.  Constitutional provision, art. 6, § 26.*

    Our state constitution provides for the removal of officers, upon *conviction*, for "willful neglect of duty" or "misdemeanor in office," and this is the exclusive mode of removal.  When *indicted* for the offenses therein enumerated, then the principle obtains *expressio unius, exclusio alterius*.  But a failure to execute a bond cannot fall within either of these offenses.  For such failure the officer is not indictable, and the provisions of the constitution do not apply to such a case, so as to exclude other modes of removal.

APPEAL from the Circuit Court of *Clarke* County.

Hon. JAMES S. HAMM, Judge.

The opinion of the court contains a very full statement of all the material facts in the case.

It is assigned for error:

1. The court erred in rendering judgment of ouster against appellant, and deciding that he was not entitled to the office of sheriff of Clarke county.

2. In deciding there was a vacancy in the office of Clarke county, and should have dismissed the proceedings.

*W. P. Harris*, for appellant:

Hyde, though failing to give a new bond, retained his office:

1. Upon the ground that the 7th section of the act of 1876 is a legislative *amotion* from office, and therefore in conflict with the constitution.

2. If the act is valid as to incumbents, they are required to hold over until their successors are elected and qualified.

The decision of this court in the case of French *v.* The State (MSS.), which established the important fact that the offices of sheriff and tax collector, are constitutionally inseparable, and that the sheriff is *ex officio* tax collector, renders the act of 1875 applicable to sheriffs; so that act may be said to be addressed to sheriffs, and a bond given according to that act by a sheriff, as tax collector, is a valid tax collector's bond; and such a bond was given by the sheriff in this case, and it is not impeached as invalid, or otherwise insufficient as security. The officer was and is constitutionally eligible to the office, and was invested with the office after satisfying all the conditions of the law as it existed.

He is not charged with dereliction, but with a failure to comply with new conditions. The power of the legislature to add such conditions is surely limited; for if they prevent the individual from holding the office for the constitutional term for which he was elected, they have the same effect as constitutional ineligibility. If it be conceded that there is reserved

to the legislature power to exact security for the faithful collection and disbursement of the public revenue, it is a power implied from necessity, and must be limited by the necessity. That power had been exercised, the security had been given, and we are bound to assume that it was sufficient. As to such officers the act of 1876 is purely arbitrary, and amounted to a legislative *amotion* from office.

When the constitution prescribes the mode in which an officer shall be removed from office it is prohibitory of any other mode. O'Neil *v.* McClinton, 5 Mo., 329; Newson *v.* Cocke, 44 Miss., 352; 3 Metc. (Ky.), 237. The constitutional term cannot be lengthened or shortened. 3 Metc., 237. Nor can the legislature add to the constitutional qualifications of the officer, nor establish arbitrary exclusions from office. Parker *v.* The People, 3 Cow., 686; Thomas *v.* Owens, 4 Md., 189.

Legislative *amotion* from office, after the officer has been inducted into office by strict conformity to existing laws, is to be condemned as a dangerous and oppressive power, whether it is employed directly or indirectly. The office is made for the people, it is true, but an individual may acquire a title to it, and this title is a vested right not subject to legislative control. The power to demand a bond is for the safety of the revenue, and for this a law is provided in the Code, 1871, §§ 315, 316. The officer takes his office subject to these laws; but in a case like this, where a bond has been given, and no suggestion that it is not ample, to admit that the legislature can impose new and onerous conditions is to surrender the whole subject to legislative caprice.

The remaining point is that, according to the spirit of the constitutional provision by which it is declared that this and other officers shall hold for stated terms, and until their successors are qualified, there should be no interregnum in any office.

The principle will apply in any case where the legislature " shortens " the term of an officer incumbent—death, resigna-

tion, *amotion*, or conviction of malfeasance, of course, are exceptions. But here the legislature puts a period to the officer's term, and the rule ought to apply; and it seems that the legislature here has not prohibited the officer from continuing to discharge his duties, pending or until the election of his successor, as is the case in Code, §§ 315, 316. After declaring that default in giving bond shall cause forfeiture, it directs, without other words, that an election shall be held to fill the vacancy.

The act of 1876 points to an event in which the board of supervisors are to treat the office of sheriff as vacant, and cause an election to be held to fill it, and it would seem that it was the design that the vacancy shall be filled before the functions of the incumbent shall cease. When the vacancy shall be filled (if it exists), and the new officer demands the office and is refused by the incumbent, then will occur the necessity for the *quo warranto*.

*G. C. Chandler*, on the same side.

*G. E. Harris*, Attorney General, for the State:

1. Had the legislature the power to pass the act forcing an officer, who had already complied with the existing law, to forfeit his office on failure to comply with the new and more stringent requirements.

2. Is this proceeding premature? 1st, I insist that new duties may be required of any officer whose duties are not specifically defined by the constitution; and, 2d, the power to create new duties and impose them upon an officer carries with it the power to require additional bonds for the faithful performance of those duties. This power has never been called in question. The constitution on this and kindred subjects does not go into details, but presupposes the enactment of laws on the subject. The power that confers a duty may regulate, control, limit, and restrict it. It may be said that the terms imposed are harsh, stringent, and unreasonable. This court cannot consider that question. Whatever we may think of the policy or the purpose of the law, when we concede the power to the legislative depart-

ment the judiciary cannot control their discretion in the exercise· of that power. It is true, as counsel maintain, that the legislature cannot remove an officer except by abolishing the office, when that power exists. But this is no attempt on the part of the legislature to remove an officer. The power to pass the act is clear. The forfeiture is the penalty annexed, and the failure to execute the bond is the act of the officer, and this court cannot hear his complaint.

3. Is this suit prematurely brought? The constitution, art. 5, §§ 21, 22, permits a sheriff to hold over until his successor is qualified. This applies only to one whose term has expired, and not to one who has forfeited his office. He cannot hold over after forfeiture; a vacancy occurs *instanti*. The legislature could not constitutionally confer upon the board of supervisors the power to adjudicate the forfeiture. That is a jurisdiction of the circuit court. Had the board declared a forfeiture and ordered an election, it would not oust the usurper; still resort must be had to *quo· warranto*, the only legal mode to oust him. It is the proper and only legal mode of ascertaining a forfeiture. The board cannot make a vacancy; they can only fill it. They can recognize a vacancy and act upon it, but have no jurisdiction to try the title to an office. They have no process to bring the party before them. The failure of the board to order an election cannot give the office to one who has forfeited it, nor will the failure of the board deprive the state of her right to remove a usurper.

CHALMERS, J., delivered the opinion of the court.

This is an appeal from a judgment in *quo warranto*, declaring a vacancy in the sheriffalty of Clarke county. Appellant, Hyde, was elected to the office of sheriff of said county at the general election in 1875, and qualified by taking the oath prescribed by the constitution, and by executing the separate bonds as sheriff and as tax collector required by the laws then in force, which laws provided, among other things, that the·

bond to be given as tax collector should be in one-half the amount of the tax assessment of the year preceding its execution.

After the execution of these bonds by appellant, to wit, on 18th March, 1876, the legislature passed an act prescribing that tax collecting bonds of the sheriffs of this state should be in two-thirds the amount of the tax assessment of their several counties for the preceding year, and requiring that the sureties thereon should be owners of freehold or leasehold estate in the counties where the bonds were given, equal in value to the amount for which such sureties justified, over and above all exemptions and liabilities. Act of 1876, p. 8.

By the 1st section of this act sheriffs already in office were required to execute new bonds, in accordance with its provisions, on or before the first Monday in August, 1876, "and if any sheriff shall fail to give a new bond as tax collector, on or before the first Monday in August, 1876, such sheriff shall thereby forfeit his office, and an election shall be held to fill the vacancy thereby created."

Appellant having failed to execute the bond required by this act, on or before the day named, the district attorney, in the name of the state, instituted this proceeding by *quo warranto*, to have his office declared vacant. The answer admits the failure to give the bond, but challenges the constitutionality of the act requiring it, and claims that, even if the act be constitutional, this action was prematurely brought, because no successor had been elected to the office, nor had any election been ordered by the board of supervisors of the county.

Was the action prematurely brought?

The argument is: 1st, that it could not be instituted until the board of supervisors, by ordering a new election, had adjudicated a forfeiture and declared a vacancy; 2d, that by the constitution of the state sheriffs are entitled to hold over until their successors are qualified, and that consequently appellant could not be treated as a usurper until the election and qualification of his successor.

Neither position is sound.   The law declares that the fail-
ure to execute the bond shall work a forfeiture of the office.
The instant, therefore, that the failure occurs, the right of
action accrues to the state to have the forfeiture judicially
·declared.   This right can in no manner be affected by a failure
on the part of the supervisors to order an election.   It will be
observed that the ordering of the election is the only duty
specifically devolved by the statute upon the board of supervi-
sors, and that it is not declared that they shall pass upon the
fact of the failure to execute the bond, and proclaim the
vacancy.   If we concede that the duty of ordering the election
carries with it the power to determine the necessity for it, it by
no means follows that the possession of such power on the part
of the supervisors precludes the state from her action of *quo
warranto*, which has been immemorially deemed the appropriate,
and is usually the exclusive, method of ejecting from office an
unlawful incumbent.

The circuit court, under our system, is the appropriate tri-
bunal for hearing and determining such writs, and when the
proper officer of the state comes and gives that court to under-
stand and be informed that a certain person has usurped and
entered upon a public office to which he is not entitled—that
an incumbent, either by reason of some act of commission or
·omission, or by the expiration of his term, has lost the right to
hold an office, but nevertheless continues to occupy and enjoy
it, we must be referred to a statute very explicit and exclusive
in its terms before we could hold that the circuit court had
not the right to determine such an issue.  Nor is there any
strength in the position that the circut court must wait until
the supervisors order the election.   It is not the ordering of
the election, but the failure to execute the bond, which works
the forfeiture.   Upon an allegation by the proper officer that
such failure has occurred, the court will inquire into the fact,
and, if found to be true, will pronounce the judgment of the law
thereon.   Section 22 of article 12 of our state constitution
provides that all officers named therein (among which num-

ber are sheriffs), ''shall hold their offices during the terms for which they were elected, unless removed by impeachment or otherwise, and until their successors shall be duly qualified to enter upon the discharge of their separate duties.'' This manifestly refers to officers holding over after the expiration of their terms, and not to such as may have been adjudged to have forfeited their offices by the judgment of a court of competent jurisdiction. Such judgments, like all other judgments, take effect from their rendition, and produce an instantaneous vacancy in the office.

Is the law unconstitutional?

It is said to infringe upon the constitution in two respects: 1st, by establishing a qualification for office different from that in existence at the date of election; and, 2d, by providing a mode of removal different from that prescribed in the organic law. We willingly concede that it is not competent for the legislature to prescribe a qualification for office different from that exacted by the law in existence at the date of election, and then to eject the incumbent because he does not possess such new qualifications. In truth, where the office is a constitutional one, and the qualifications for it are laid down by that instrument, the legislature can prescribe no other qualifications whatever, either before or after an election. Those prescribed by the constitution can neither be enlarged nor diminished by legislative action.

But this in no manner affects the legislative power to specify the character of bonds to be executed by fiduciary officers. The confusion springs from an improper use of the word '' qualification,'' or rather from a failure to note its double meaning. Qualification; in the sense in which we are discussing it, means the endowment or acquirement which renders eligible to place or position, and the giving of a bond can never be said to be a question of eligibility. When, on the contrary, we speak of an officer's qualification as dating from the execution of his official bond, we refer, not to his capacity for, or eligibility to, the position, but to the act whereby he was

installed.   It is not his qualification for the office, but his act of qualifying in it, of which we speak.   Appellant's proposition, therefore, if fairly stated, should be that the legislature cannot prescribe a mode of induction into office different from that in force at the date of election, nor enact new and additional formalities after those originally in force have been complied with.   As thus stated, the proposition cannot be maintained.

An office is not a contract, and, as is well settled, the incumbent is not protected by the prohibition of the federal constitution against the impairment of the obligation of contracts.

The office holder has no such vested right in the term, fees, salaries, or duties of the position as will prevent such legislation on those subjects as the public interest demands, provided in such legislation no provision of the state constitution is infringed.

That which the constitution expressly prescribes or prohibits cannot be altered, but whenever that instrument simply creates the office, and leaves all else to be determined by legislative enactments, such enactments may be changed and modified as legislative wisdom may suggest.

Thus, the constitution of our state creates the office of sheriff and fixes his term.   The office, therefore, cannot be abolished, nor the term altered by statute.   But the constitution is silent as to the duties of the office, and as to the mode in which the state and individuals shall be guaranteed in the faithful discharge of those duties.

As to the duties, it has been held that it is not competent to strip the sheriff of those which the common law has ever affixed to his office as inseparable therefrom, or to deprive him of those prerogatives which the settled policy and legislation of the state have made equally inherent in the position.

This is based upon the principle that the framers of the organic law had these duties and prerogatives in view in creating the office and in giving to it a name and designation which,

43

*ex vi termini*, imported the possession and exercise of these traditional and well known powers. French's case (MSS).

There is nothing said in the constitution on the subject of a bond by the sheriff, yet these functionaries have, time out of mind, been bonded officers. The framers of the constitution must have contemplated that they should remain so, and they remitted to the legislature full jurisdiction over the subject, untrammeled by constitutional restraints.

Persons elected to the office, therefore, take it subject to such regulations on this subject as the legislature may from time to time enact.

It is well settled that wherever an office has been created by the legislature it may be abolished by that body at pleasure, and it may be laid down with equal confidence with regard to offices created by the constitution, that all the duties connected therewith, not protected by that instrument, may be established, altered, and abolished at the will of the legislature, without regard to the pleasure or interests of the incumbent.

The holder of the office can only invoke the protection of the constitution as to those things expressly contained or necessarily implied in it. As to all others he is completely at the mercy of the legislative will. The State *v.* Smeeds, 26 Miss., 47; 7 Ind., 172; 21 ib., 32; 33 N. Y., 269; 3 Humph., 480; 15 Ala., 521.

This principle finds striking illustration in the history of the legislation of this state, with regard to this very subject of sheriffs' bonds. None of our constitutions have ever contained any provision relative thereto, but the legislature has always exacted bonds from these officials. By an oversight in the codifiers of 1871 there was no provision made in that book for the giving of bonds as tax collectors by the sheriffs. As soon as this omission was made apparent by the decision in French's case (MSS.) the legislature was convened in extra session, and, by the act of July 31, 1875 (Acts of Special Session, p. 11), directed that such bonds should be executed

on or before a day named, or in default thereof the office should become vacant.

The sheriffs throughout the state complied with this demand, although they had been elected at a time when no bond as tax collector was by law required of them. Can it be supposed that they could have refused to do so, and yet have remained in office? Can it be seriously argued that the state was powerless to prevent her entire revenue from passing into, or remaining in, irresponsible hands, without any security whatever? But it is said in the case at bar that appellant had given a bond which was ample to protect the interests of the state. This is a question which we cannot look into. He had not given the bond required by law. While it may be true that the legislature could not force a vacancy in his office by requiring him to do an impossible or grossly oppressive act, certainly a requirement that his bond should be equal in amount to two-thirds of the taxes he was to collect, and that his sureties should be real estate holders in the county, was neither grievous nor unreasonable.

It only remains to be considered whether there was anything unconstitutional in the manner of his removal from office.

The 26th section of the 6th article of the constitution provides "that clerks, sheriffs, and other county officers, for willful neglect of duty or misdemeanor in office, shall be liable to presentment or indictment by a grand jury, and trial by a petit jury, and, upon conviction, shall be removed from office."

It is contended that, a mode of removing these officers being thus pointed out, no other mode can be resorted to, on the principle *expressio unius est exclusio alterius*. The principle is sound if the removal be for an indictable misdemeanor or neglect of duty. As to those, the one manner of removal provided excludes all others. But, clearly, the failure to give a bond can fall within neither of these classes of offenses. Manifestly it is not a misdemeanor. While in one sense it

may be said to be a neglect of duty, we do not think it is one for which an indictment would lie.

The neglects spoken of by the clauses under consideration are such as work evil to the state or to parties litigant; such, for instance, as the willful refusal to execute process or to collect taxes, or permitting an escape. For these things a sheriff may well be indicted, but it is impossible to conceive of a presentment and conviction for failing to give a bond, which he was entirely at liberty not to give, if willing to surrender his office.

The execution of the bond being a condition precedent to his entering upon or retaining the office, we are bound to infer that he failed to give it either from inability or because he preferred surrendering the position. To indict him in either event would be an absurdity.

We have seen that it was competent for the legislature to exact of appellant the new bond required by the act of 1876. If so, it had the right to provide that his failure to execute it should work a forfeiture of his office, and for the purpose of ascertaining that forfeiture the proceeding by *quo warranto* is the ancient and appropriate remedy. This view derives great strength from a consideration of the fact that at the time of the adoption of our present constitution, and for many years anterior thereto, we had upon our statute books (and it still remains there) a provision that if, after the qualification of a sheriff, the bond executed by him should become worthless, he should be cited to give a new and solvent bond, and upon failure to do so should forfeit his office.

This provision was adopted and kept in force under a clause of the constitution of 1832, identical with the one above quoted from the constitution of 1869. Const. of 1832, art. 5, § 28. The framers of our present constitution, therefore, in readopting said clause, may be presumed to have done so with the idea that it was not inconsistent with, and did not nullify, the statutory provision referred to.

Judgment affirmed.