## JAMES T. FANT v. W. H. GIBBS, AUDITOR.

1. CONSTITUTIONAL TERM OF OFFICE. *Legislative power to abridge.*
   The legislature cannot abridge a term of office prescribed by the Constitution.

2. LEGISLATIVE POWER. *Device cannot enlarge.*
   What the legislature cannot do directly, it cannot accomplish by indirection.

3. STATUTE. *Unconstitutional in part. Dependent clause.*
   One clause of a statute enacted in consequence of others as part of a general scheme, will, if the other clauses are pronounced unconstitutional, fall with them, though itself free from constitutional objections.

4. DISTRICT ATTORNEYS. *Act of 1877 to assign unconstitutional.*
   Under the Constitution, art. 6, § 25, providing that " a competent number of district attorneys shall be elected by the qualified electors of the respective districts, whose term of service shall be four years, and

whose duties and compensation shall be prescribed by law," the act of Feb. 1, 1877 (Acts 1877, p. 43), which directs the governor to assign to each of the eleven districts one of the thirteen district attorneys, previously elected and commissioned for the thirteen districts out of which the eleven had been formed, provides that the unassigned district attorneys shall, in the absence of the district attorney assigned, perform the duties during the terms of the Circuit Court in the counties of their residence, and fixes the salary of each unassigned district attorney at $100 per annum, is unconstitutional in so far as it attempts to deprive the unassigned district attorneys of districts and duties, and thus by indirection oust them of their terms of office, and, as a consequence of such ouster, deny them the compensation of other district attorneys; and they are entitled, notwithstanding said statute, to the salary previously established.

THIS proceeding was a *mandamus* before the Hon. S. S. Calhoon in vacation, on the petition of James T. Fant, elected and commissioned, in 1875, district attorney for the tenth judicial district of Mississippi, to compel W. H. Gibbs, auditor of public accounts, to issue a warrant on the State treasurer for $100 for *a month's* salary, which the auditor had refused to issue on demand because the petitioner had not been assigned. The question raised by the auditor's demurrer to the petition was the constitutionality of the act of Feb. 1, 1877 (Acts 1877, p. 43), entitled " An Act to assign district attorneys to duty in the judicial districts of this State," which is as follows : —

" SECT. 1. That it shall be the duty of the governor, by the first day of March, 1877, to assign to each and every judicial district in this State one of the several district attorneys heretofore elected and now in commission in this State.

" SECT. 2. That, in making such assignments, district attorneys shall be assigned, whenever it shall be practicable, to the respective districts in which they may reside, and when there shall be no district attorney resident in any judicial district as now constituted, then to such vacant district shall be assigned the district attorney voted for by the electors of a plurality of the counties in such district : *Provided*, the district attorney so voted for shall not be the only district attorney resident in some other district.

" SECT. 3. That should any district attorney refuse to serve in the district to which he may be so assigned, it shall be the

duty of the governor to appoint a district attorney to serve in the district left vacant by such refusal until a district attorney shall be elected, and to order an election for district attorney for said district at the next general election, and the person then elected in said district shall hold said office and perform all the duties thereof until the next regular election for district attorneys in 1879.

" SECT. 4.   That the salary of each and every district attorney, who is not assigned by the governor under this act, or who shall refuse to serve in the district to which he may be assigned, shall be and the same is hereby fixed at the sum of one hundred dollars per annum ; and any district attorney not so assigned, or who shall refuse to serve when assigned, shall, in the absence of the district attorney assigned, appointed or elected for that district, perform all the duties of district attorney during the terms of the Circuit Court held in the county where such district attorney so unassigned or refusing to serve may reside."

The remaining section repealed all conflicting statutes, and provided that the act should take effect from its passage.

The demurrer to the petition was sustained, and Fant appealed.

*A. M. Clayton,* for the appellant, argued the case orally, and filed a brief making the following points : —

1. With what rights was the appellant clothed by the Constitution and laws ?   The authorities fully establish that he had rights of which he could not be divested, except in the manner prescribed by the Constitution.   *Runnels* v. *State,* Walker, 146 ; *Hughes* v. *Buckingham,* 5 S. & M. 647 ; *State* v. *Smedes,* 26 Miss. 47 ; *McAffee* v. *Russell,* 29 Miss. 84 ; *French* v. *State,* 52 Miss. 760 ; *Hyde's Case,* 52 Miss. 665.    The same rule is fully settled in other States.   *King* v. *Hunter,* 65 N. C. 603 ; 6 Am. Rep. 754 ; *People* v. *Tieman,* 30 Barb. 193 ; *Wammack* v. *Holloway,* 2 Ala. 31 ; *Speed* v. *Crawford,* 3 Met. 207 ; 3 Kent Com. 450 ; *Commonwealth* v. *Gamble,* 62 Penn. St. 343 ; 1 Am. Rep. 428 ; *Marbury* v. *Madison,* 1 Cranch, 137.   In some of the cases, this right is called a property ; in some, an estate ; in some, an interest ; in some, a vested right: but all recognize it as something valuable,

which is entitled to the protection of the law. It is not founded in contract, but in *grant*, and constitutional grants imply a prohibition of any limitation or restriction by legislative authority.   *Commonwealth* v. *Gamble*, above cited; *Fletcher* v. *Peck*, 6 Cranch, 87 ; *McCafferty* v. *Guyer*, 59 Penn. St. 109.

2. These are the rights of the relator.   Has the legislature respected those rights in the enactment under consideration ? The fair construction of the constitutional provision is, that it vests the office in the party elected for a term of four years in the district for which he was elected.   Con., art. 6, § 25 ; *Saunders* v. *Erwin*, 2 How. (Miss.) 732.   The duties and compensation are to be prescribed by law; but the Constitution, in a subsequent clause, directs that the legislature shall provide suitable compensation for all officers.   Art. 12, § 7.

It is admitted that offices created by the legislature may be abolished by the legislature, and that as to such offices the compensation may be changed by the legislature, under some restrictions, and under some modifications recognized in the case of French.   But the question here is, whether the legislature has invaded the *constitutional* rights of this party.   The established rule is, " that an officer *de jure* is one who is in according to the mode prescribed by law, he has a legal title, is clothed with all the rights of the place, and cannot be interfered with except in the manner prescribed by the Constitution."   *Kimball* v. *Alcorn*, 45 Miss. 157 ; *Brady* v. *Howe*, 50 Miss. 621; *Newsom* v. *Cocke*, 44 Miss. 363 ; *State* v. *Douglas*, 26 Wis. 430 ; *State* v. *Messmore*, 14 Wis. 163 ; *Collins* v. *Ellis*, 7 Jones (N. C.) Law, 548 ; *Lowe* v. *Commonwealth*, 3 Met. (Ky.) 237 ; *Commonwealth* v. *Gamble*, 62 Penn. St. 343 ; 1 Am. Rep. 422; *Howard* v. *State*, 10 Ind. 101; *People* v. *Kelsey*, 34 Cal. 475.

3. This law under consideration operates as a total deprivation of all official character, station, duty and territory.   There is but one contingency in which the relator is permitted to do a single official act; that arises upon the failure of the *assigned* district attorney to attend the Circuit Court of the county in which Fant resides.   No powers are left him, no duties, no district, no salary ; it is the shadow of a name, nothing more. That which is recognized in the cases before cited as property

is taken away, without trial, without notice, and not in due course of law. This is beyond legislative power. There is no attempt here at direct removal in words; the attempt is to abolish the district, and to accomplish that indirectly which cannot be done directly. Every part of the Constitution is equally obligatory, and one part ought not to be so construed as to destroy another. The election of officers by the people is as sacred a right as any other, and any attempt to take it away amounts to an *evasion*, which will not be tolerated by the courts. *People* v. *Bull*, 46 N. Y. 57; 7 Am. Rep. 302; *Brady* v. *Howe*, 50 Miss. 621; *O'Leary* v. *Adler*, 51 Miss. 33; *Cotten* v. *Ellis*, 7 Jones (N. C.) Law, 545; 23 Ill. 547.

Possibly the legislature may make changes in the extent of a district, but it can make no changes which in effect wipe it out and abolish an office. It may be different in regard to the boundaries of counties; because the Constitution expressly confers the power to change county lines and establish new counties. There cannot be two officers for the same place; the assignment under this act did not carry with it even a color of title. *Wilcox* v. *Smith*, 5 Wend. 231; *People* v. *Albertson*, 8 How. Pr. 363.

4. The reduction of the salary to the nominal sum of $100 is in conflict with art. 12, § 7, of the Constitution. This sum was not intended as a salary for services, but as a retiring pension, a system utterly at war with the frame of our government. The effort to starve the incumbent out of his office should not be upheld. *Cotten* v. *Ellis*, 7 Jones (N. C.) Law, 548; *King* v. *Hunter*, 6 Am. Rep. 756. Evasions will not be sanctioned. *Barney* v. *Baltimore*, 6 Wall. 288. The case of *Swann* v. *Buck*, 40 Miss. 268, does not conflict with this view, because the tenure of the office was not then fixed by the Constitution.

If the court should be of opinion that a part only of this act is unconstitutional, the result would still be in favor of the relator. Where the bad can be separated from the good, the act will be void as to the one and valid as to the other. *Campbell* v. *Union Bank*, 6 How. (Miss.) 625. But if they cannot be thus separated, the whole is void. Cooley on Con. Lim. 177. " When a part of a statute is unconstitutional, that fact does

not authorize the courts to declare the remainder void, unless all its provisions are so connected together, and so dependent on each other, that it cannot be presumed the legislature would have passed the one without the other." Here the parts are inseparable.

There can be no security for life, liberty or property, unless we extend to them the constitutional protection. The old Athenian maxim was founded on the wisest and soundest policy. It regarded an injury to one member as an injury to the whole body politic, which all were bound to redress.

*Harris & George*, on the same side, filed an elaborate brief, in which they contended that the act in question is unconstitutional, not only because it is not competent for the legislature to abolish a judicial district so as to deprive the district attorney of his office during the term for which he was elected, but also because of the manner in which this is done in the act in question. The act provides a nondescript corps of officers, owing their rights not to election but to appointment by the governor, another set having no duties and only nominal salary. It declares that officers elected by the people of one district shall act in another, and the duties and salary of all shall not be fixed by law but determined by the governor. These results, they contended, violate the constitutional provisions on this subject.

*James Z. George*, on the same side, made an oral argument.

*George E. Harris*, Attorney-General, for the appellee, argued the case orally, and filed a brief making the following points : —

1. Congress exercises delegated powers ; the legislature, reserved power, limited only by the Constitution of the State. 15 N. Y. 303 ; 27 Barb. 593 ; 4 Met. 244 ; 5 Met. 257 ; 24 N. Y. 497 ; 15 La. 190 ; 18 Ind. 258. The courts will impose constitutional limitations, but not those which rest on theory alone. *State* v. *McCann*, 21 Ohio St. 211, 212.

2. It was not the legislative intent, in authorizing assignments of district attorneys, to deprive the petitioner of his office. He remains in office, and can exercise the power and discharge the duties ; and he has a salary, although reduced, to correspond with his duties.

3. By the Constitution, art. 6, § 25, the legislature has power full and complete over three subjects : the number of district attorneys for each district ; the duties to be performed by each district attorney ; and their compensation.   The number need not be uniform.   The duties are variable, and the compensation may be changed at will.   The recent changes in the salaries of chancellors, superintendent of education, and commissioner of immigration, during the official terms, were lawful only because there was no limitation upon the legislative power.

4. The district attorneyship is not a salaried office, except when made so by the legislature.   The " compensation " provided for by the Constitution may be salaries, fees, or commissions ; and, in fact, is now all three, — a salary paid by the State, a fee for each conviction, and commissions on money collected.

5. New duties and new obligations may be and frequently are imposed upon an officer. *Hyde* v. *State*, 52 Miss. 665.   He does not hold his office by contract, giving him a vested right in all that the office is or purports to be at the time of his induction.   But an office is a continuing charge or employment, the duties of which are prescribed by law.   *Shelby* v. *Alcorn*, 36 Miss. 273.

6. The Attorney-General then examined the authorities cited and relied upon by counsel for the relator, contending that they did not even tend to sustain his position.

7. Concede to the legislature power over a subject, and the courts lose control.   They cannot direct the exercise of legislative discretion.   Here the Constitution does two things.   It (1) creates the office, (2) prescribes the term and fixes the mode of filling it.   All else is controlled by the legislature, under the direct and explicit grant of power.   Can the court say that, because the duties of the relator are confined to Marshall County, they are too restricted ?   Will it undertake to declare how many district attorneys will be " a competent number " ?   That is a power conferred not on the court, but in express terms upon the legislature.   Surely it will not be insisted that the legislature cannot reduce the salary of the office during the term.   That doctrine was put at rest by this

court in *State* v. *Smedes*, 26 Miss. 47. It seems that the action of the legislature under review must be sanctioned, as it is neither a violation nor an evasion of the Constitution. Even if the case presents a doubtful question, the court will not declare the act void. *Campbell* v. *Union Bank*, 6 How. (Miss.) 625; *Newsom* v. *Cocke*, 44 Miss. 352.

8. The legislature may reduce the district, diminish the number of officers, and lessen the salary. Is there a check, and at what point shall it be applied to the legislative discretion? The court will apply no other checks but those which the Constitution authorizes, or which are clearly implied in the grant of power.

The judges delivered opinions *seriatim*.

Chalmers, J.:

The proposition that the legislature cannot, directly or indirectly, remove the incumbent of an office created by the Constitution during a term fixed by that instrument, needs no argument nor elucidation. If not originally self-evident, it has, by a long and unbroken series of decisions, become firmly settled. No one will contend, for instance, that any act of legislation could abridge the term of an incumbent of the gubernatorial office, or of that of the Attorney-General, or Auditor of Public Accounts. No matter what disguise might be adopted, or how plausible the means devised, it would be the duty of this court to scan rigidly any act that seemed to contemplate such an end, and to pronounce void any provision the practical effect of which was to accomplish such a result. This doctrine does not proceed upon the idea that the State has entered into a contract with the incumbent, by which it has irrevocably bound itself to accept his services for a specified period, though it is undoubtedly true that in some sense, and for many purposes, an office is the result of contract, and the incumbency of it a right of property, which courts will protect. But the fundamental principle which prohibits the removal by legislation of a constitutional officer during a constitutional term, is that the framers of the organic law, by creating the office and specifying the term, have unmistakably

indicated their will, first, that the State shall always have
such an officer, and, secondly, that the duration of the term of
each incumbent shall depend not on legislative will, but on
the solid basis of an ordinance that cannot be changed save
by a change in the Constitution itself. Incumbency for the
prescribed term by each holder of the office is as important
as that the office itself shall exist. The legislature can no
more abridge the one than they can abolish the other. It is
needless to remark that, if by any device it is permitted to
oust an officer during his term, full control over the terms is
acquired ; for, if one legislature can eject an obnoxious officer,
the succeeding one may dispense with the services of his suc-
cessor ; and thus, while nominally preserving the term, no in-
cumbent will be allowed to enjoy it. The inhibition against
this proceeds rather from the absence of legislative power than
from any idea of a contract between the State and the office-
holder.

The correctness of these views will not be questioned where
only one officer of a class is prescribed by the Constitution, as
in the case of the Governor or Attorney-General; nor where a
fixed number is established, as is the case with the judges of
this court and the supervisors of the several counties. But
it is suggested that where the Constitution merely directs
that a suitable or competent number of a designated class of
officers shall be elected or appointed, and leaves that number
to be determined by the legislature, the power to establish
carries with it the power to change ; that, therefore, even
though a fixed term is prescribed, each legislature must judge
of the number needed by the State, and that the judgment of
one legislature on this question cannot bind a succeeding
one. It is said, for instance, that the Constitution of this
State gives terms of fixed duration to the circuit judges, chan-
cellors, district attorneys, justices of the peace and constables,
but leaves the number of these officials to be wholly regu-
lated by legislative will ; and hence that each legislature must
determine for itself how many are necessary. It is therefore
insisted, that whether all the incumbents shall remain in office
during the full constitutional terms for which they were
chosen must depend on whether the legislature deems that

the State so long requires the services of the entire number. This view we deem wholly untenable, because utterly subversive of the end intended to be accomplished by the constitutional specification of terms. We cannot doubt that, if such had been the intention of the framers of the Constitution, they would have left the duration of the terms, as well as the number of these officers, to legislative discretion.

Evidently two antagonistic evils which lurked on either side of the public weal were intended to be equally guarded against by giving to these officers fixed terms, but leaving their number to legislative will. One of these was the imposition on the State of a horde of superfluous officers, who, holding their places for life, or through long terms prescribed by the body that brought them into existence, should prove useless and costly burdens on the State. The other was the evil, to some extent inseparable from republican institutions, which springs from frequent and violent changes in the officers of the State with every variation in popular caprice. Both of these evils were guarded against by affixing definite and short terms to these offices, and leaving their number to be determined by the legislature. Thus, at frequently recurring intervals, the legislature could ascertain how many judges, district attorneys and justices were necessary, and could order their election or appointment; but, when so chosen, they must be permitted to serve out the full terms prescribed by the Constitution, unless sooner removed in the modes pointed out in that instrument. If the Constitution had undertaken to determine the exact number of these officers, it might have inflicted on us a number greatly in excess of our needs, or it might have crippled the entire judiciary system by a supply totally inadequate to the requirements of the public service. On the other hand, if it had left their terms wholly at the legislative mercy, there would have been a wholesale change in the judiciary of the State with every change of party in that body. It is impossible to imagine any thing more disastrous than this to the welfare of the Commonwealth, and we are unable to perceive any method of avoiding it wiser and better than the one adopted. We would not abridge the power of the legislature to decide as to the number needed, but that power must

be exercised in subordination to the equally plain requirement that their terms, when chosen, shall not be interfered with. Each clause in the Constitution is as important as every other clause, and no one clause can be sacrificed to another. The authority to determine the number of these officials, therefore, must be exercised in harmony with their constitutionally prescribed terms; and this can only be done by holding that such determination must be arrived at before the commencement of the term, and cannot thereafter be changed until it has expired.

If this construction sometimes inflicts on the State, for a few years, one or more supernumerary officers, this is infinitely better than that this whole class of important officials, comprising almost the entire body of the judiciary of the State, should be at the mercy of the dominant party in each successive legislature. It is said that no system of government is perfect, and that power must be lodged somewhere. This is undoubted, and its application may be found in the consideration that the legislature will not ordinarily provide for a horde of unnecessary officers; but, if they should do so, the evil need only be endured until the expiration of the terms of those first chosen. Then, and not till then, the corrective can be applied. These remarks, of course, have no application to offices created by the legislature, as to which its power is unlimited.

If this precise question has not heretofore been decided in this State, in a case where the number of officers to be chosen was left to legislative discretion, the views here announced have been so often and for so long a period foreshadowed in our decisions, that we cannot think them novel, either to the profession or to the people at large. They are intimated with more or less distinctness in *Runnels* v. *State*, Walker, 146; *Hughes* v. *Buckingham*, 5 S. & M. 647; *State* v. *Smedes*, 26 Miss. 47; *McAffee* v. *Russell*, 29 Miss. 84, 96; *Newsom* v. *Cocke*, 44 Miss. 352, 363; *Brady* v. *West*, 50 Miss. 68; *French* v. *State*, 52 Miss. 759; *Hyde* v. *State*, 52 Miss. 665. In other States the exact question has been uniformly settled in consonance with these views, though not always upon grounds which meet our entire concurrence. We agree with these cases, however, in the result reached; namely, that a con-

stitutional term is as much beyond legislative interference where the legislature has the power to fix the number of officers as where the number is fixed in the organic law. *People* v. *Dubois*, 23 Ill. 547; *Commonwealth* v. *Gamble*, 62 Penn. St. 343; *Lowe* v. *Commonwealth*, 3 Met. (Ky.) 237; *State* v. *Messmore*, 14 Wis. 163.

Having arrived at the conclusion that no incumbent of a constitutional office can be displaced during the continuance of a constitutional term, and that this principle is in no manner affected by the delegation to the legislature of the power to determine the number of officers required by the necessities of the State, let us apply this principle to the case at bar, keeping in view the further proposition, that a constitutional inhibition of a certain result includes every possible method by which that result can be accomplished.

The relator, in November, 1875, was elected to the office of district attorney of the tenth judicial district for the constitutional term of four years. There were then thirteen judicial districts in the State, and there was one district attorney elected for each. They were each entitled by the law then and still in force to an annual salary of $1,200, besides fees of office. During the spring of 1876 the terms of office of all the circuit judges in the State expired, and the legislature, perceiving that there was no necessity for so many as thirteen, passed, on April 4, 1876, an act by which the number of districts was reduced from thirteen to ten (to which an eleventh was afterwards added); but it was careful to provide, by a supplemental act, that this act should not take effect until the expiration of the terms of the judges then in office. In the appointment of their successors, eleven judges only were commissioned; but no provision having been made with reference to the district attorneys, there were left in office two more of these officers than there were districts. To remedy this supposed evil, the legislature, at its next session, passed an act, entitled " An Act to assign district attorneys to duty in the judicial districts of this State," approved Feb. 1, 1877. In the changes in the boundaries of the districts, produced by the act of April, 1876, two or more district attorneys had been, in some instances, thrown into one district, while in other dis-

tricts none were left. The object of the act of February, 1877, was twofold : first, to have one district attorney assigned to each district; and, second, to rid the public treasury as far as possible of the burden of the supernumeraries. This assignment was ordered to be made by the governor, who was directed by the law, that where only one district attorney resided in a district, he should be retained, and that where two or more resided in the same district, that one should be retained who had been voted for by the electors of a plurality of the counties in the district. Those who should, under this arrangement, be left unassigned, were not by express enactment displaced from office, but were left, without any duties or territory within which they could officially act, except that it was provided that they might officiate in the counties of their residence in the absence of the assigned officer. The salary of the unassigned officials was fixed at $100 each, while that of the others was left at $1,200. The fees of office would of course belong to the officers left on active duty. The relator Fant was unassigned. It is agreed by counsel that we shall consider and pass upon the constitutionality of the act of February, 1877, without regard to matters of form.

It is at once evident that we are not called on to pass upon the constitutionality of so much of the act as directs the assignment of district attorneys, except in so far as its effect is to displace some incumbent; and it is unnecessary, therefore, to decide whether such assignments are valid in districts where no collisions are created. We would remark, however, that we are not inclined to adopt the views announced by some of the courts to the effect that an officer can have a vested territorial right in the particular counties composing the district in which he was elected. We entertain no doubt of the legislative power to change the boundaries of districts. Let us inquire into the validity of the act with reference to those officers left unassigned. It is evident that its constitutionality in this respect must depend on whether it amounts to a practical displacement of such officers.

Sect. 25 of art. 6 of the Constitution is in these words : " There shall be an attorney-general elected by the qualified electors of the State, and a competent number of district

attorneys shall be elected by the qualified electors of the respective districts, whose term of service shall be four years, and whose duties and compensation shall be prescribed by law." It will be observed that full authority is confided to the legislature to regulate the duties and compensation of the district attorneys, and to create the districts in which they shall be elected. Their term alone seems to be beyond legislative control. But a grant of power to regulate specified matters of detail, so far from including authority to abolish them, amounts frequently to an express negation of such authority. Thus, when it is in effect declared by this section that the legislature may prescribe the duties and compensation of district attorneys, and lay off their districts, it is an implied prohibition of the power to deprive them of all duties and all compensation, and leave them without districts. It may enlarge or curtail their districts, but it must leave some district. It may add to or subtract from their duties, but it must leave some duties. It may increase or diminish their compensation, but it must leave some compensation.

It is evident that the law in question violates, with reference to the relator, two of these requirements. It has left him neither district nor duties. There is not a court in the State in which he has the right to prosecute a criminal or enter a *nolle prosequi.* There is not a grand-jury room in which his presence would not be an unauthorized and unlawful intrusion. He may, indeed, in the absence of the district attorney, who has been assigned to his district, appear in the county of his residence ; but this is wholly independent of his own volition, or that of the presiding judge, and rests wholly on the caprice or convenience of the assigned officer. Certainly this is neither giving him a district, nor permitting him to exercise any of the functions of the office. If he can be said to be an officer at all, he certainly occupies a most anomalous position. Can a man be said to be an officer of the State when there is not within its limits a spot where he is allowed, by law, to perform any function of the office which he is supposed to fill ? Has not the relator been as effectually removed from office as if the legislature had declared, in explicit terms, that from and after a certain date James T. Fant should

cease to be a district attorney? To ask these questions is to answer them. We conclude, therefore, that the act is clearly unconstitutional in depriving him of the right to perform any official acts.

But it is said that the legislature has the right to diminish his compensation at pleasure; that a salary of $100 per annum has been left him; and that as this writ is only prosecuted to assert a right to an undiminished salary, we can consider no other question than this. The point is not free from difficulty, and has been carefully considered. It is true that the legislature has full control over the salary, as well as over the duties and the districts. We are not prepared to say that it may not graduate the compensation according to the labor imposed; and if it had seen fit to reduce the tenth district to a single county, and to have fixed the salary of the incumbent at $100, we are not prepared to say that the act would have been invalid, though upon this point we express no opinion, because it may be that the framers of the Constitution, in speaking of the districts of district attorneys, must, in view of the past history of the State, be held to have contemplated districts coextensive with the territory presided over by a single circuit judge. But we are not presented with such a case, and we must look at the whole law in its practical effects on the relator alone. He has neither duties nor district, and the salary left him must therefore be regarded either as a pension or as a compensation for possible duties, which he may never be called upon to perform. In either aspect, it is wholly at war with the genius of our institutions. The legislature has exclusive control over the salary of the Attorney-General. Suppose, then, it should enact that all the duties of that officer should be performed by the district attorney residing in the Jackson district; but that, in the absence of that officer, the Attorney-General might continue to act, and that his salary should be $100. Could this court hesitate to declare such an act unconstitutional? And yet that is, *mutatis mutandis*, the case at bar. By § 7 of art. 12 it is made the duty of the legislature to " provide suitable compensation for all officers." It would be an exceedingly delicate matter for this court to declare that the compensation

provided for any officer was not suitable; and we should certainly never do so where the salary, however low, had been fixed on a basis deemed by the legislature to be sufficient: but where it was clearly not so fixed, but was a mere partisan device to get rid of an obnoxious officer, it might be our duty to interfere. Suppose, for instance, that a legislature dominated by a political party different from that of the officers belonging to the State departments in the Capitol should reduce their salaries to five dollars per annum. In such a case, we might feel compelled to interpose.

We rest our objections, however, to the law under review, upon the ground that it is clearly unconstitutional in depriving the relator of both duties and a district; and, inasmuch as the compensation left is manifestly based upon this absence of duties, it must be condemned also. We cannot imagine for a moment that the legislature would have prescribed such a salary, except upon the idea that the remaining portions of the act were valid; and, inasmuch as the one is dependent upon the other, they must stand or fall together. While it is true that one portion of a law may be upheld while the rest is overthrown this is only true where they are so far independent provisions that it may be presumed that the legislature intended one to subsist, even though the balance perished. But where the entire scheme must fail because of want of power to enact it, there can be no possible good in upholding an isolated provision, which it was, perhaps, competent for the law-giver to enact, but which is unreasonable and unjust if left to stand alone. Some years ago this court pronounced unconstitutional a statute which undertook to create the office of tax-collector in the several counties, and to deprive the sheriffs of the duty of collecting the public revenue. Suppose that there had been a salary attached to the collection of taxes, and that this act had contained a provision that thereafter the sheriffs should receive no such salary. Such a clause by itself would have been constitutional. But can there be any doubt that it would have fallen with the balance of the act, and that the sheriff who, in defiance of the act, had collected the taxes would have been entitled to the salary? The principle is, that where a particular clause of a statute is manifestly based upon cer-

tain other clauses, which are pronounced unconstitutional, it will fall with them, though itself not obnoxious to constitutional objections. If the legislature annexes certain duties to a particular office, with an added compensation therefor, and the addition of the duties is declared unconstitutional, it is manifest that the officer cannot claim the compensation. The converse of the proposition must also be true, that if it attempts to strip an officer of all duty, and consequently, and as part of the same act, abolish his salary, he will not lose the salary, even though it had a right to abolish it, if the attempt to strip him of duties was invalid. The two are so dependent, each upon the other, that they must stand or fall together.

*The judgment should be reversed and the rule made absolute.*

SIMRALL, C. J. :

It may be accepted as well settled in American constitutional law that where an office is created by the Constitution, or referred to and dealt with as a known existing office, it is incompetent for the legislature to abolish the office ; that if the organic law prescribes a *term*, it is beyond the power of the legislature to enlarge or abridge its duration; and that if the Constitution has defined a mode of amoving an incumbent, that is the exclusive method. These principles were clearly recognized in *Newsom* v. *Cocke*, 44 Miss. 352, and *Brady* v. *Howe*, 50 Miss. 607.

The question is, whether the act " to assign district attorneys to duty in the judicial districts of this State," approved Feb. 1, 1877, in so far as Fant has been affected by it, is an unwarrantable interference with his rights. This act was intended to adapt the services of the district attorneys then in office, and whose terms had not expired, to a reduction of the judicial districts, which left two supernumerary attorneys. The act reducing the judicial districts had greatly disarranged the territory for which the several attorneys had been elected. The scope of the act is to assign these attorneys for the State to suit the new Circuit Court districts. The plan of the assignment is given in the second section. But there being two district attorneys more than Circuit Court districts, the fourth section

deals with them. The provision is that the salary of the district attorney, who is not assigned by the governor, shall be $100 per annum. The duty to be performed is to act as district attorney in the absence of the district attorney assigned to that circuit, in the county in which he resides. Fant was one of the two district attorneys not assigned, and resided in the county of Marshall.

Recurring to the provisions of the Constitution relating to the subject, we find that § 25 of art. 6, which organizes the judiciary, provides that " a competent number of district attorneys shall be elected by the qualified electors of the respective districts, whose term of service shall be four years, and whose duties and compensation shall be prescribed by law." The Constitution names the district attorney as an officer well known in the judicial history of the State ; and the language of the article at once brings to mind the officers of the same name and class of duties that existed before the adoption of the Constitution. Three things are left to the discretion of the legislature : first, the definement of the districts; second, the duties to be performed; and third, the number of district attorneys. Primarily, doubtless, the convention had in view a number of district attorneys equal to the number of circuit judges, and that their respective districts would be the same as the judicial. That is so, because existing statutes had so provided, and such had been the arrangement under the Constitutions of 1817 and of 1832. The convention also had in view the class of duties which had always been assigned to that officer. Yet it is plain that the arrangement of the districts territorially is intrusted to the legislative wisdom. If the legislature should at any time choose to increase the number of the districts to fifteen, twenty, forty or any other number, or to reduce the number, its power over the subject is plenary. So, too, it may add to or take from the duties to be performed. But it is too plain for argument that the General Assembly must define the districts, and that there must be attorneys for the " respective districts " (I do not say there may not be two or more), and that when the incumbent is elected, his full term is four years. To repeat: the Constitution is imperative, that there shall be districts, within which

the attorney or attorneys who have come into office in the lawful mode shall discharge the duties prescribed by law, and for the period of the term, and for such duties be paid such compensation as the legislature may deem suitable.

There can be, in the constitutional sense, no such officer as district attorney without territory, without a term, and the right to perform the official duty. If the legislature takes away from that officer, chosen by the " qualified electors " for the term of four years, all territory, so that there is no *place* where he can perform the duties annexed by law to the office, or if it withdraws compensation or designates some other person to discharge the duties incident by law to the office, such legislation would conflict with the twenty-fifth section of the sixth article and the seventh section of the twelfth article of the Constitution. If he were deprived of a district, that is, a defined territory within which to perform duty, he is effectually deprived of the right which his election conferred for four years. If another is designated to perform all the functions, for the discharge of which he was elected, a constitutional officer has been deprived in substance and effect of his place. If his compensation is cut off, the legislature has starved him out, and done by indirection what it would not be pretended could be done directly.

Let us turn to the fourth section of the act in question, and see how Fant is affected by it. He is one of the district attorneys not assigned by the governor under the preceding sections of the law. Every inch of territory where he could do any and all duty incident by law to the office to which he was elected is taken from him, and another person, under this statute, has been designated by the governor to fill the office in that territory and do all things incident to it. That person, by the assignment of the governor, is as fully and completely district attorney in Marshall County, the place of Fant's residence, as in any other county of the district. It is as thoroughly and completely his right and duty under the statute to do any and all things pertaining to the office in Marshall County as anywhere else in the district. Unless the right, in the absence of the assigned district attorney, to perform all the duties of district attorney during the terms of the Circuit Court of

Marshall County leaves Fant invested with all the constitutional rights, privileges and duties, within the meaning and intendment of the Constitution, of the office of a *district* attorney, then he is not left by this act charged with the office, such as the Constitution means. Plainly it was his duty, under the general law, to represent the State in all prosecutions for infraction of the penal laws ; to institute, prosecute and defend all civil suits in which the State or a county was interested or a party. Certainly he could not bring a suit in Marshall County on the bond of any State or county officer for misfeasance or malfeasance. The single privilege left to him is to perform all the duties of district attorney during the terms of the *Circuit* Court of Marshall *during* the absence of the assigned attorney. If the assigned attorney is absent on the first day of the term, Fant may act. But if the assigned attorney is present on the second day, Fant's occupation is gone. Moreover, Fant cannot appear for the State or county in the Chancery Court, although the assigned attorney may be prostrated by sickness at home. He is only district attorney contingently. He has not, under the law, a *vested* right to the office for the term ; but he may, in a contingency, on the happening of an accident, act as district attorney in the *Circuit* Court. But in no event can he prosecute or defend suits for the State or a county in the Chancery Court, *virtute officii.*

It seems to me impossible to put any other construction on the act of the legislature, in the particulars referred to, than that it is an indirect ouster of Fant from his office as district attorney. While the legislature carefully refrains from declaring outright that he shall no longer be district attorney, it accomplishes the same result by indirection, — it takes from him a district and deprives him of a right to perform functions, except in an improbable and remote contingency. `For, since another person is by the assignment of the governor district attorney for all the counties and territory embraced in the district, it is as much his duty to attend the terms of the Circuit Court of Marshall County, as those of any other county. Certainly that reading of the Constitution is wholly inadmissible which subjects the right of a constitutional officer to the enjoyment of his office and the discharge of its functions to the whim,

caprice or accidents that may actuate or befall some other individual.

The reduction of the salary to $100 was part and parcel of the plan to evade the Constitution. If Fant could be retired from duty in the manner proposed, the sum named would be wholly unobjectionable; for then the single question would be whether that sum would not be enough to compensate him for being in readiness to act for the State in Marshall County, and, if his services were actually needed, then to render them. The judiciary could not so far invade the province of the legislature as to review its conclusions respecting the amount of compensation to the State officers. Its interference in that direction could only be vindicated where the reduction of compensation was a mere device to degrade the officer, or deprive him of the enjoyment of the office, which things would be repugnant to the Constitution.

I am of opinion that the plaintiff in error is entitled to the redress sought, and that the judgment should be

*Reversed.*

CAMPBELL, J. :

My view of this case is that the term of service of Fant as district attorney is inviolable, not upon any notion of contract or vested or property rights as against the State, but because of the provision of the Constitution that " a competent number of district attorneys shall be elected by the qualified electors of the respective districts, *whose term of service shall be four years*, and whose duties and compensation shall be prescribed by law." Having been elected in pursuance of a law providing for a competent number of district attorneys, he has the right to serve four years. The legislature may, by law, prescribe the duties and compensation of district attorneys, but may not deny them the right to serve for the term of four years. What the legislature cannot do directly, it cannot do by indirection and evasion. In the exercise of its right to prescribe duties and compensation, it cannot prohibit a district attorney from his term of service for four years. Therefore, in so far as the act of the legislature ousts Fant of his office, and denies him the compensation of other district attorneys as

a consequence of such ouster of his term of service, it is in conflict with the Constitution. He is entitled to his salary, and the *mandamus* should be awarded.