BEM PRICE v. J. M. ANDERSON ET AL.,

*and*

W. G. BIAS v. J. W. FREDERICK.

1. CONSTITUTIONAL LAW. *Power of legislature to reduce judicial districts and leave judges unassigned to duty. Act of March 8, 1888, construed.*

The act of the Legislature, approved March 8, 1888, which re-arranges the Circuit and Chancery Court districts, reduces the number thereof, prescribes the time for holding courts in the counties, continues the district attorneys in service in the counties of their old districts till the expiration of their terms, and assigns for duty in the new Circuit and Chancrey Court districts a designated judge and a designated chancellor for each district, respectively, leaving the other judges and chancellors, having unexpired terms, unassigned to duty and unmentioned, is not violative of any provision of our State constitution. It does not deprive such unassigned judges and chancellors of their offices. Their terms of office are prescribed by the constitution, which supplements every legislative act with its modifying influence; and if the legislature has not the power to dispense with the exercise of judicial functions by supernumerary judges and chancellors, during their terms, then the judges and chancellors not provided with districts by the act under consideration are entitled to continue in service within the counties of their respective districts as previously existing, having regard to the times for holding courts prescribed by this act, until the end of their several terms. *Arnold, J.,* dissented.

2. SAME. *Legislative power to abolish judicial districts, and dispense with supernumerary officers. Hindered operation of act.*

The right of the legislature to abolish unnecessary offices, when the number is not fixed by the constitution, (as is the case in respect to the offices of circuit judges and chancellors), is unquestionable. This may be done, as to the offices of circuit judges and chancellors, by abolishing districts, thus dispensing with the judges and chancellors, and thus providing that successors shall not be appointed for those districts, or by expressly declaring that successors shall not be appointed to the supernumerary judges and chancellors. And the fact that a legislative act thus abolishing districts, as does the act above referred to, cannot, because of a constitutional obstacle, have full operation at first, but must await the efflux of time before it can accomplish the legislative purpose, to rid the State of supernumerary officers, does not render it invalid. *Arnold. J.,* dissented.

3. SAME. *Assignment of several judges to same district. Constitutional provision as to interchange of circuits.*

Circuit judges and chancellors are made by the whole State, acting through the governor and the senate, for service in districts arranged for convenience, and with a view to interchangeability, and are subject to duty everywhere in the State. And there is nothing in the constitution requiring *one* judge for a district. The constitutional provision that "the judges of said court (Circuit Courts) may interchange circuits with each other," does not preclude the assignment of several judges to duty in the some circuit. *Arnold, J.,* dissented.

4. SAME. *Conflict in provisions of Act of March 8, 1888 Effect.*

If, under the provisions of the Act of March 8, 1888, above referred to, the time for holding the Circuit Courts are so arranged that the district attorneys, who are thereby continued in service in their old districts, cannot attend all the courts in such districts, that does not affect its constitutionality. An act of the legislature is not to be pronounced unconstitutional merely because of conflict in its details or difficulty in its practical operation, incidental to its main purpose. *Arnold, J.,* dissented.

APPEALS from the Circuit Court of Lafayette County and the Chancery Court of Union County.

HON. W. M. ROGERS, Judge.

HON. BAXTER McFARLAND, Chancellor.

Under the law in force at the time of the enactment by the Legislature of ."An Act in Relation to Judicial Districts for Circuit and Chancery Courts," approved March 8, 1888, the state was divided into eleven judicial districts "for Circuit and Chancery Courts." That act provided, "That the state shall be divided into eight judicial districts for Circuit Courts;" and that "The state shall be divided into six judicial districts for Chancery Courts." The act accordingly divides the state into districts, those for the Circuit Court being numbered from "First" to "Eighth" inclusive, and those for the Chancery Court being numbered from "First" to "Sixth" inclusive. It assigns every county of the state to a Circuit Court district and to a Chancery Court district. It then provides as follows: "That the Hon's. W. M. Rogers, S. H. Terral, L. E. Houston, J. H. Wynn, C. H. Campbell, Ralph North, J. B. Chrisman and A. G. Mayers, Circuit Judges, respectively, of the sixth, seventh, first, fourth, fifth, eleventh, tenth and eighth judicial districts, as now con-

stituted, be and they are hereby assigned to duty as Circuit Judges to the districts created by this act as follows : to the first district, the Hon. L. E. Houston; to the second district, the Hon. S. H. Terral; to the third district, the Hon. W. M. Rogers; to the fourth district, the Hon. J. H. Wynn; to the fifth district, the Hon. C. H. Campbell; to the sixth district, the Hon. Ralph North; to the seventh district, the Hon. J. B. Chris-man; to the eighth district, the Hon. A. G. Mayers."

" That the Hon's. Baxter McFarland, S. Evans, J. G. Hall, W. R. Trigg, Warren Cowan, T. B. Graham, Chancellors, respectively, of the first, seventh, third, fourth, eleventh and eighth districts, as now constituted, be and they are hereby assigned to duty as Chancellors to the Chancery districts created by this act, as follows : to the first district, the Hon. Baxter McFarland; to the second district, the Hon. S. Evans ; to the third district, the Hon. J. G. Hall; to the fourth district, the Hon. W. R. Trigg; to the fifth district, the Hon. Warren Cowan; to the sixth district, the Hon. T. B. Graham."

The act also provides, " That the district attorneys shall continue, to the expiration of their present terms, as district attorneys for the counties constituting the districts to which they were elected."

The times for holding Circuit and Chancery Courts, respec-tively, in the several counties of the state are fixed by the act.

And it provides that " there shall be allowed and paid to each chancellor and judge, in monthly payments, a salary of $2,750 per annum." The salary previously allowed by law to judges and chancellors was $2,500.

This statue makes no express disposition of, and no allusion to, the judges and chancellors not assigned to duty and whose terms of office had not expired at the time of its enactment.

On the 9th of March, 1888, an act amendatory of the one above adverted to was approved. It provided, " That any of said courts which may be in session at the time said act shall go into effect may conclude such term without reference to any change made in said act." And it provided that the act of which it was amendatory should not take effect till the 1st of April, 1888, instead of from its passage as therein provided.

At the time of the passage of the acts above referred to, the Hon. W. S. Featherston was judge of the Circuit Court for the Second Judicial District, as previously established, and his term of office would not expire till the 12th of May, 1888. The county of Lafayette, which was in the second district, as then constituted, was by the Act of March 8th, 1888, put in the third district, established by that act. The Hon. W. M. Rogers, who had been the presiding judge of the sixth district, and whose term of office will expire on the 13th of January, 1891, was by that act assigned to duty in the new third district. And on the first Monday in April, 1888, he proceeded, in pursuance of such assignment, to hold a court in Lafayette County at the time prescribed by the act referred to.

The county of Union was in the Second Chancery Court district at the time of the passage of the act of March 8th, 1888, and the Hon. B. F. Kimbrough was the chancellor of that district—his term of office to expire on the 14th of April, 1888. By the act of March 8th, 1888, referred to, the county of Union was put in the first district thereby established, and the Hon. Baxter McFarland, who had been the chancellor of the first district as previously existing, was assigned to duty in the new first district. His term will expire on the 29th day of August, 1891. On the first Monday and 2d day of April, 1888, the Hon. Baxter McFarland proceeded, under the act of March 8th, 1888, to hold a court in the county of Union.

At the time of the holding of the Circuit Court of Lafayette County by Judge Rogers, as above stated, a case in which Bem Price was plaintiff and J. M. Anderson and others were defendants, was pending in that court, and the defendants pleaded in abatement that the act of March 8th, 1888, was unconstitutional, and that Judge Featherston and not Judge Rogers was the constitutional and legal judge of the Circuit Court for that county. And at the time of the holding of the Chancery Court of Union County by Chancellor McFarland, as above stated, there was pending in that court a case in which J. W. Frederick was complainant and W. G. Bias was defendant; and the defendant pleaded that the act of March 8th, 1888, was unconstitutional, and that Chancellor Kimbrough was the only constitutionally qualified chancellor for that county.

To the plea in the Circuit Court there was a demurrer, which was overruled. The judgment was for the defendants, and the plaintiff appealed.

The plea in the Chancery Court was held by the chancellor to be insufficient, and from his decree to that effect an appeal was granted to the defendant. The two cases were argued, considered and decided together.

*T. M. Miller*, Attorney-General, for Price, appellant, and Frederick, appellee.

It may be confidently said that the act under consideration is valid on its face, because passed in pursuance of a power expressly conferred upon the Legislature, and which would have existed without the grant.

Nothing stands in the way of the power of the Legislature to re-district the State under the Constitution except the supposed vested rights of a few judges and chancellors here and there. At the expiration of their unexpired terms, there is nothing to prevent the literal operation of such a law in full.

The case is this : The Legislature may change the circuit and chancery districts and reduce the number ; but since, under the Constitution, the terms of judges and chancellors shall not depend upon the caprice of Legislatures, the rights of incumbents must be preserved. In other words, the argument of the objectors is : If such persons choose to hold on, legislation of the kind considered must, *upon its face,* not be allowed to take effect until the expiration of the incumbents' terms. I take it that the only possible objection to the act lies in the enforcing clause, and only then in case a judge or chancellor shall choose to stand upon his rights ; and, in saying this, it is even wrongly assumed that it was the purpose of the Legislature, by the new arrangement, to turn out officers whose terms had not expired.

Since it is a cardinal rule of construction that where the unconstitutional features of an act may be separated or effaced, and the residue be valid, that will be done, and only so much of it be disregarded. Apply this principle, and the act here considered takes effect literally subject to the right of the judges and chancellors, who are not specifically provided for, to exercise their functions within the territory of their original districts,

until, by efflux of time, their commissions expire, or until they resign or die. It is certain they cannot serve beyond the expiration of their terms. Suppose all these judges and chancellors had resigned on the 1st day of April—whether necessary to the public welfare or not—would it be said the act was still void and new appointments be rendered necessary because the words "*provided* the judges and chancellors of the —— districts as now constituted shall resign on or before that date" were omitted from the enforcing clause?—(Mem.: the act and supplementary act are considered as one.)—When, too, the constitution itself would supply the proviso. Why shall not the act be modified or restrained by the constitution according to the general rule? Why shall not the constitution be satisfied by a displacement of only what may seem obnoxious to it, and what is favorable and right be retained?

But, it is said, the argument implies that there may be two judges in the same or parts of the same district at the same time. The analogies of nature are invoked, and it is declared that two bodies cannot occupy precisely the same space at the same time. The Lord forbid that physical laws should be derided or antagonized. At the same time it is hoped a Court will not be misled at this day by illustrations put as logic.

The constitution enters into statutes just as the general law enters into contracts between individuals, and in both cases numerous limitations and modifications result. General words in an act which render it unconstitutional are restrained and a limited meaning attached.

But it is said that by this act the lower house of the Legislature is made to usurp the functions of the Governor and Senate in making appointments. Even if the fact warranted this criticism, I am not aware that the concurrence of the lower house with the Governor and Senate in a given appointment would affect the appointment by the other bodies. So that sort of objection could not arise until an act of appointment should be passed, the objections of the Governor to the contrary notwithstanding.

So far as the assignment of a judge to a different district than the one for which he was appointed is concerned, that is

carrying the claims of judicial independence to an extravagant length. When the present constitution was adopted, it was understood that such power existed in the Legislature; and since no change was made in that instrument upon the subject, it must be understood that this view of the fundamental law was accepted. *Miazza* v. *State*, 36 Miss., 613.

The Attorney-General argued the cases orally.

*H. A. Barr*, for Anderson *et al.* and Bias

Has the Legislature the power to pass the act in question?

It is firmly settled in this State, and I believe in every State of the Union where the question has arisen, that the constitutional term of an officer is beyond legislative interference.

*Fant* v. *Gibbs*, 54 Miss. R., 396; *Runnels* v. *State*, Walker R., 146; *Hughes* v. *Buckingham*, 5 S. & M. R., 647; *State* v. *Smedes*, 26 Miss. R., 47; *McAffee* v. *Russell*, 29 Miss., 84–96; *Newsom* v. *Cocke*, 44 Miss. R., 352–363; *Brady* v. *West*, 50 Miss. R., 68; *French* v. *State*, 52 Miss. R., 759; *Hyde* v. *State*, 52 Miss. R., 665; *People* v. *Dubois*, 23 Ill. R., 547; *Commonwealth* v. *Gamble*, 62 Penn. St., 343; *Lowe* v. *Commonwealth*, 3 Met. (Ky.), 237; *State* v. *Messmore*, 14 Wis., 163.

Pomroy on Constitutional Law, 553; Cooley's Const. Limitation, Ch. IX, under head of "Federal Protection of Persons and Property," note, page 277 of Second Edition.

There are acts of Legislatures which do not affect the constitutional rights of the public, but affect the constitutional property or personal rights of certain individuals. Such acts may be said in the language of C. J. Shaw in *Wellington* v. *Petitioners*, 16 Pickering R., 96, not to be void, but voidable only; for such individuals may waive the invasion of their rights, or may surrender them for a consideration, or may have estopped themselves from interposing the objection.

But this act does not merely affect the rights of Judge Featherston. It affects the permanency and independence of the Judicial Department in which the entire public is interested and upon which hangs the safety and weal of every man and woman in the state. It is therefore an act against which the people of the state are protected by the constitution, and which the Legislature had no power to pass, and which is utterly void and, being

void, is as if it had never been.   Cooley's Const. Lim., Ch. VII, under head of "Declaring Statutes Unconstitutional," page 188 of Second Edition.

In Fants' case, Judge Chalmers said that the legislature may prescribe the duties and compensation, and lay off the districts of district attorneys, and this was an implied prohibition of the power to deprive them of all duties and compensation, and leave them without districts; that their districts may be enlarged or curtailed, but it must leave some districts; and that it may add to or substract from their duties, but it must leave some duties. And Judge Simrall said, "There can be, in the constitutional sense, no such officer as district attorney without territory, without a term and the right to perform the official duty."

The principle enunciated is that when an officer provided for by the constitution is elected or appointed, it is not to a mere name or shadow, but to all the rights and duties of the office, and that his district cannot be taken away, because it is indispensable to the exercise of his rights and duties.

If parts of the act in question are unconstitutional, will the remainder fall with them?  The purpose of the act was to divide the *entire* state into new Circuit and Chancery districts, reducing the number of districts, and the number of Judges and Chancellors.   It was manifestly the intention of the Legislature to provide for Circuit and Chancery Courts in every county of the state.   If the act is unconstitutional as to a single district there will be counties left wholly without Courts, and irretrievable confusion will ensue, and some of the Judges and Chancellors will be left with fewer counties than they had under the former law.

If, when the unconstitutional portion of the act is stricken out, that which remains is incomplete and cannot be executed in accordance with the Legislative intent, the whole act must fall.   If an act has one general object, and all the provisions are connected and dependent upon each other to carry out the general object, and if striking one provision out, so defeats the general object as that it cannot be presumed that the Legislature would have passed the act without it—the entire act must fall.

Cooley's Constitutional Limitations, Ch. VII, page 178 of Second Edition, and authorities there cited.

To illustrate—if the integrity of the second Circuit Court district is preserved, W. M. Rogers will only have the counties of De Soto, Tate and Panola. If the integrity of the second Chancery district is preserved, J. G. Hall will only have the counties of De Soto, Tate, Panola, Grenada and Coahoma.

These are but specimens of the disruption that must ensue.

*H. A. Barr* made an oral argument.

CAMPBELL, J., delivered the opinion of the Court.

In view of the great public interest involved in the question of the validity or invalidity of the act, entitled : " An act in relation to the judicial districts for circuit and chancery courts," approved March 8, 1888, we yield to the earnest request of counsel, and decide it without regard to the manner in which it was raised.

The right of the legislature to establish and change judicial districts at pleasure, and prescribe the time for holding courts in each county is undeniable. If the act under consideration contained a provision that it should not take effect as to circuit judges and chancellors in office during their terms, except as herein expressly provided, and that they should continue to discharge their functions as before in the territory formerly assigned them, during their term, but according to this act as to time, and when their terms of office should end, the districts should be as it provides ; or, if the form of the act was that, as the terms of certain judges and chancellors should expire successors should not be appointed, and the counties composing their districts should be put in other districts, no objection could have been urged to the act.

This is the result of the act, in one view of it. It makes no mention of retaining for their terms certain judges and chancellors ; but the constitution silently, by its inherent force, adds to every act of the legislature its modifying influence, and if it is true that it is not admissible for the legislature to dispense with the services of a supernumerary judge or chancellor during his constitutional term, it follows that the constitution adds to the

act of the legislature the provision above mentioned, and thus supplemented it is free from objection on constitutional grounds. The legislature did not undertake to deprive certain judges and chancellors of their offices. It simply reorganized judicial districts, and prescribed the time for courts. This it had the right to do. It did not usurp executive functions in appointing judges and chancellors. It designated certain ones who should perform duty in the districts newly created. These were already duly constituted judges and chancellors, liable to be put at service in any district the legislature might determine. It is for the legislature to divide the State into convenient districts. It must decide what is convenient. It may reorganize and change them at pleasure. There is no such thing as an unchangeable district, or one unchangeable during a judge's term, if the legislature determines on a change. No judge has a vested right in a particular district, any more than a district can have a vested right in a particular judge. This was true when judges were elected by districts.

*Miazza* v. *The State*, 36 Miss., 613.

*A fortiori* now, when judges are made by the entire State through the governor and senate representing the whole people, the right of the legislature to take counties from one district and add them to another must be conceded. Certainly, duly constituted judges and chancellors to whose districts counties are added are none the less than before judges because of such additions. This applies to many of the judges and chancellors of the State. If it is true that a judge or chancellor cannot be dispensed with, and left unprovided with a district for the performance of his functions, it follows that existing judges and chancellors for whom no districts are provided by the act, are entitled to continue on duty as before in their formerly existing districts, which, as to them and for this purpose, still exist during their term. This view maintains the validity of the act as to the provisions it contains, and the right of judges and chancellors for whom districts are not made by it to continue in their former districts, regarding the provisions of the act as to time, and thus the act will have effect to accomplish the legislative purpose to rid the State of supernumeraries, hindered for a time in

part, but soon relieved by mere efflux of time of all obstacles to its complete operation. There is no unconstitutional provision in the act. The objection made is not for what it contains, but for what it omits. If it had expressly made districts for certain judges and chancellors not named in it, not an objection could be urged against it. If as to them their old districts are held to remain, as no new ones were made for them, no complaint can justly be made.

The mere fact that the act cannot, because of some obstacle, have full and complete operation at once, is no valid objection to giving it effect as far as can be. Even a permanent hindrance to complete effect of a law is not objection to its having such operation as it can, and, surely, a temporary and transient obstacle cannot be ground for condemning a law. If some express provision of the act was unconstitutional it would not cause the whole to fall, unless the incurable infirmity infected the body of the act, the scheme as a whole. If the trunk is sound a decayed limb will not cause the tree to be destroyed. If a single member is incurably diseased, and the disease is local and not constitutional, only the member should perish, and not the whole body. ·This is both scripture and good sense. If part of an act be void, and it is not one essential as part of a whole dependent in some degree on it, that will not prevent the operation of the other which is so independent of the rejected part as in no degree to rest on it for support. This distinction pervades the cases, and resolves them all. It is not allowable to enter the field of uncertain conjecture as to the probable action of the legislature, but the criterion of *connection and dependence between parts* must be applied for the solution of the question. A multitude of cases illustrate the distinction. They are too numerous to be cited, but they rest on the distinction adverted to above. The cases in this state sustain this view, and this is the generally accepted doctrine.

In *Fant* v. *Gibbs*, 54 Miss., 396, the only question was whether or not Fant was entitled to his salary, and the act of the legislature was held void in so far as it ousted him of his office and deprived him of the salary, and no farther. The court carefully abstained from any intimation against the full and complete

operation of the act, as to all else except the "unassigned officers," as Chalmers, J., expressed it, and the opinions of the judges show plainly their view to be that, in every other respect, the law was to have effect.

Therefore, if some part of this act was admittedly unconstitutional, that would not defeat it, unless it was such an essential part as to make the other incomplete without it. But, as said before, no provision of this act is objectionable. It is a consequence of the act, something outside of it and not in it, which is claimed as ground to condemn it. It omits something it should have contained, and which, if contained, would remove all objections, it is said. If the constitution supplies the omission, who can complain, and what is the harm?

There is perhaps a mistaken notion about judges and chancellors, caused by our experience of one for each district. From that we are apt to associate judges and districts as made for each other; but the constitution does not so ordain. It requires the appointment of judges of the Circuit Court and chancellors. The State shall be divided into convenient judicial districts and convenient chancery districts. A Circuit Court shall be held at least twice in each year, and judges of said court may interchange circuits with each other, as may be prescribed by law. These are the provisions of the constitution on this subject, and there is no requirement in them of *one* judge or chancellor for a district. A judge of the Supreme Court for each of three districts is expressly provided for by the constitution; but such language is not employed as to circuit judges and chancellors. The nearest approach to a suggestion by the constitution of a judge of the Circuit Court having a district or circuit is. in the language: "The judges of said courts may interchange circuits with each other;" but there is nothing in that to exclude the idea of several judges doing duty in a district. Literally, a *circuit* is the act of going around. Probably, the sense in which it is employed by the constitution in this connection is, as Webster defines it: "A certain division of a State or country established by law for a judge or judges to visit for the administration of justice;" and, if so, the existence of several judges in one district or circuit, or whose duty it was to visit it periodi-

cally, would not prevent them from interchanging circuits with each other, as contemplated. Were the Legislature to divide the State into five judicial districts, and provide for ten judges of the Circuit Court, and for each to make an annual circuit, the constitution would not be violated, if judges and districts must coexist; for there would be the convenient districts, as determined by the Legislature, and judges of the Circuit Courts and courts held twice a year, and their circuits, might be interchanged, as provided for by law. Every provision and implication of the constitution as to these courts would be satisfied by this arrangement. This shows the plenary power of the Legislature over the arrangement of districts or circuits and terms.

In practice, a judge is appointed for a particular district, because it has been so arranged by statute; but it would not violate the constitution if he was appointed a judge of the Circuit Court under a law requiring any prescribed number of judges, who should itinerate by districts throughout the State in a manner to be provided. Convenient districts are provided for, not with reference to judges, but for other purposes. It may be for interchange of circuits. That is all that is mentioned specially in connection with districts or circuits. It might be deemed desirable that a different judge should appear at every semi-annual term of the Circuit Court.

To secure this interchange may have been the whole object of districts. It is for the legislature not only to create districts, but to determine how many Judges of the Circuit Court and Chancellors shall be appointed, and nothing forbids several to perform duty in each district, if the legislature so determines. The primary idea of a judge of the Circuit Court is one to make the circuit prescribed by law, periodically, to administer justice in court. He must have a portion of territory to visit, in order to make a circuit, but that is determinable by the legislature, which might require every judge of the Circuit Court in his turn to make the circuit of every judicial district in the state. There is no indissoluble connection between a judge and a district. Judges are made by the whole state, for service in districts arranged for convenience, and with a view to interchangeability, and are subject to assignment to duty anywhere in the state.

They have no vested territorial rights, as against legislative power of change. If a judge is appointed for a particular district, he holds subject to a legislative change of districts, and must conform to it. If a judge and a district must co-exist, it is for the legislature to prescribe his district, and, as he has no vested right, he must take what is prescribed for him. He is a public servant subject to all legitimate commands of the sovereign. Assigned to duty in a particular locality, he belongs there until ordered elsewhere, according to the public exigency.

If the judgeship is beyond legislative reach, the field of its operations is subject to control. If the office is inviolable, the place for its exercise is not. Place and time are subject to legislative control, where neither is fixed by the constitution. To deny this is to withhold from the legislature the right to consult and conserve the public interest, in deference to the assumed right or interest of the judge, whereas the public good is the paramount object of constitutional government.

The right of the legislature to abolish unnecessary offices, where the number is not fixed by the constitution, must be granted. This may be done by abolishing districts, and thus dispensing with the judges appointed for them, and thus providing that successors shall not be appointed for those districts; or by expressly declaring that successors shall not be appointed for certain judges. There is no other conceivable way of doing it. It cannot be that too many are to continue, because of incapacity to be rid of them. If the thing aimed at, and done is allowable, the mere form of accomplishing it cannot matter, if the constitution is not disregarded as to manner.

The power of the legislature to do what it attempted by the act cannot be questioned. It concluded that there were too many judges of the Circuit Court and chancellors, and with this conviction properly resolved to reduce the number to the needs of the state. The terms of office of the judges and chancellors expired at different times. They had been appointed under the legislative plan of one for each district, designated by number. As said above, if the shape of the enactment was that at the expiration of the term of each judge and chancellor named, no successor should be appointed, and the counties of his dis-

trict should be parts of other districts, not an objection would have been heard to the act as violative of the constitution. But the point made is, that certain judges and chancellors are ousted during their term. But they are not by the terms of the act, and, if by the constitution they could not be, they are, as to all except time of Courts left just as before.

Like a grant of something encumbered, which operates as far as it can, and fully, when the encumbrances are extinguished, this law hindered for a time, on the view taken, will, when the several hindering terms end, have unobstructed effect.

But, it is said, the effect of that is to put two judges in one district for a time. There cannot be a doubt of the right to do that. Would any doubt the right of the legislature to meet a public exigency by such an arrangement? Suppose an eminent judge, whose services were of great value and were properly appreciated, should become temporarily incapacitated for the duties of his circuit, might not the legislature grant him leave of absence for a year or longer, and provide for the appointment of a judge to perform duty in his district? May it not create judgeships at large independent of particular locality to supplement the services of overworked judges in certain districts? But, it is said, the purpose or effect of the act is, as to certain judges and chancellors unassigned, to create *Emeritus* officers, with office and pay and no duties, contrary to the genius of our government. That is not true, if by the constitution they are still on duty in their former districts. Better that, for a little while, when the difficulty will be removed than to perpetuate an unnecessary number of officers.

With the wisdom of the action of the legislature we have nothing to do. With conflicts alleged to exist in the act its constitutionality is in no manner involved. If it be true that under it district attorneys cannot attend all the courts in their districts, because of the arrangement as to time for court, that certainly does not go to the constitutionality of the act. It was never before heard of that an act of the legislature should be pronounced unconstitutional merely because of conflict in its details or difficulty in its practical operation incidental to its main purpose.

---

Concurring the opinion.

---

We see nothing violative of the constitution in the act, and that ends our functions in dealing with the question.

ARNOLD, J., dissenting.

I dissent from the opinion of the majority of the court. In my judgment, the acts in question go beyond the boundaries of legislative authority, and have not, and should not have, the force and effect of law.

The constitution of the State contains these provisions:

"The State shall be divided into convenient judicial districts. Judges of the Circuit Court shall be appointed by the Governor, with the advice and consent of the Senate, and shall hold their office for the term of six years. A Circuit Court shall be held [in each county] at least twice in each year; and the judges of said courts may interchange circuits with each other in such manner as may be prescribed by law. . . .

"The Legislature shall divide the State into a convenient number of chancery districts. Chancellors shall be appointed in the same manner as the judges of the Circuit Court, . . . and they shall hold their office for the term of four years. They shall hold a court in each county at least twice in each year. . . .

"All civil officers under this State shall be liable to impeachment for treason, bribery or any high crime or misdemeanor in office. Judgment in such cases shall not extend further than removal from office and disqualification to hold any office of honor, trust or profit under this State. . . . For reasonable cause which shall not be sufficient ground for impeachment, the Governor shall, on the joint address of two-thirds of each branch of the Legislature, remove from office the judges of the Supreme and inferior courts; provided the cause or causes of removal be spread on the journal, and the party charged be notified of the same before the vote is finally taken and decided, and shall have an opportuuity to be heard, by himself or counsel, or both."

The act of the legislature in relation to the judicial districts for Circuit and Chancery Courts, approved March 8, 1888, and the act supplemental and amendatory to the same, reduce the number of Circuit and Chancery Court districts in the state, from and after the first of April, 1886, by consolidating some of

the old districts, and by placing counties composing some of the former districts into other districts, thus enlarging some of the old districts, and abolishing others. In each of the old districts there were a judge and chancellor, duly appointed, qualified and acting, at the time of the passage of these acts, and at the time when they were to go into effect, some of whose terms did not expire for several months and in one instance, not until more than three years afterwards, and by the process of redistricting, several are left without districts, and without any official duty being required by the act to be performed by them. Without naming these disfranchised judges and chancellors, other judges and chancellors are expressly assigned by the act to each of the districts formed by the act. The act provides that district attorneys shall continue to the expiration of their terms of office, as district attorneys for the counties constituting the districts to which they were elected; but there is no such provision or any provision in regard to judges and chancellors who are left without districts and official duties. The pay of judges and chancellors is increased by the act in these words: "There shall be allowed and paid to each judge and chancellor, in monthly payments, a salary of twenty-seven hundred and fifty dollars per annum," but it is not provided whether this shall apply to the retired judges and chancellors with the others, or only to those who are assigned to districts and duties.

According to the new arrangement, court occurs at the same time, in two or more counties, which were formerly in the same district, where such counties are distributed among different new districts, so that in one or more districts, the former judge or chancellor of such counties and former districts would not be able to hold the court in the counties of their former districts at the time specified in the acts, if they were to attempt to do so, unless they could overcome the natural impediment, of being in different places, and holding court in different counties, at the same time.

The statement of a few simple principles will aid in the comprehension and solution of the issues involved.

An office is a public charge or employment, and a public officer is one who has some duty to perform concerning the

public. 7 Bac. Abr., 280; *Hill* v. *Boyland*, 40 Miss., 618; *Shelby* v. *Alcorn*, 36 Id., 273. The term office embraces the ideas of tenure, duration, emoluments and duties. *United States* v. *Hartwell*, 6 Wall., 385; *Hoke* v. *Henderson*, 25 Am. Dec., 677, and note.

Without argument, and without the citation of authorities, it may be said that there is nothing better settled in this State and in American law, than that when an office is created by statute, it is wholly within the control of the legislature. The term, the duties and the compensation of such an office may be changed, or the office itself may be abolished, at pleasure, without reference to the wishes or interest of the incumbent, if there is no constitutional inhibition against it, and the legislature is the sole judge of the necessity or propriety of doing either.

And it is quite as well settled—it is believed there is no authority to the contrary—that if the term of an office is prescribed by the constitutution, the legislature cannot remove its lawfully elected or appointed incumbent, or abridge his term, either directly or indirectly, *except in the manner provided by the constitution.* *Fant* v. *Gibbs*, 54 Miss., 396; *People* v. *Dubois*, 23 Ill., 547; *State* v. *Messmore*, 14 Wis., 163; *Com.* v. *Gamble*, 62 Penn. St., 343; *Lowe* v. *Com.*, 3 Met. (Ky.), 240; Cooley on Con. Lim., *277 and note.

It is incomprehensible to me how this could be doubted in this State, since the decision in *Fant* v. *Gibbs*, *supra*. I stand. by *Fant* v. *Gibbs*. It seems not to be overruled by the opinion of the majority just read, or, if it is, it is not so declared.

In the light' of these principles it is clear to me, that an attempt by the legislature to remove a judge or chancellor from office, during his constitutional term, by the indirect method of denying him any compensation, or by depriving him entirely of a district and all the authority and functions of his office, would be as much a violation of the constitution as it would be to declare in express terms that the office was vacant, or that the incumbent should be, and was thereby removed from office. The legislature may enlarge or curtail judicial districts, and increase or diminish judicial duties, provided always, it does not thereby virtually remove existing judges and chancellors by depriving them entirely of districts and duties.

The manifest object of the constitution in fixing the term of judicial officers, was to secure to some extent, at least, an independant judiciary—the palladium of private rights and public liberty, wherever there is wisdom and virtue enough to support it—by placing the tenure of officers in that department, beyond the influence and control of the other departments of the government, and by making its duration dependent, not on the varying and uncertain will of the legislature, but on the constitution itself, which changes not, except by the action of the people in their sovereign capacity.

The constitution is above and control all the departments of the government. It is the paramount law, and between the will of the people as expressed in the constitution, and that of the legislature as declared by statute, the former must always prevail.

It seems to me, that a plainer case of attempting to remove judges and chancellors indirectly, or in a mode *different from that provided in the constitution,* for such purpose, than is furnished by the acts of the legislature in question, cannot well be conceived. After being entirely ignored by these acts, and stripped of districts and official duties and authority, what more could be done to deprive them of their offices?

The express retention of the district attorneys in service by the acts, till their terms expire, without any such provision as to the omitted judges and chancellors, excludes the idea that the latter were to be continued in services. The doctrine of the maxim *expressio unius, exclusio alterius,* applies. It is impossible to avoid it. The assignment of certain judges and chancellors to each of the new districts, implies and means that they shall hold the courts in such districts, and nothing being said or required of the other judges and chancellors, implies and means, that no official duty is imposed on them, or expected of them. If the legislature intended that they should toil not, how can this court say nay, and subject them to the burdens of labor, if the acts of the legislature are sustained? Which is to govern, the constitution, the legislature, or this court?

These acts of the legislature are unconstitutional and void, and are, as if they were not, in so far as they attempt to remove

or retire a part of the judges and chancellors of the state from office before the expiration of their terms, and the question is then presented, does this render the whole of the acts inoperative and of no effect?·

In my judgment, it does.

A statute may be unconstitutional, either because it proposes to accomplish something prohibited by the constitution, or to accomplish some lawful and even laudable object, by means repugnant to the constitution.    It is an elementary principle that the same statute may be in part constitutional and in part not constitutional, and that if such parts are wholly independent of each other, that which is constitutional may stand, while that which is not constitutional must fall.

Judge Cooley, states the rule thus: That " when a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected in meaning, that it cannot be presumed that the legislature would have passed the one without the other.   If, when the unconstitutional portion is striken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained.   And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, or if all could not be carried into effect, the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them."   Cooley on Con. Lim., * 178, 179.   Striking from the statute what is obnoxious to the constitution, the same author says again, if " that which is left is complete in itself, sensible, and capable of being executed, wholly independent of that which is rejected, it must be sustained."   Cooley on Con. Lim., * 149.

Substantially, the same rules are recognized and approved in *Fant* v. *Gibbs, supra.*  In that case Judge Chalmers said,

" while it is true that one portion of a law may be upheld while the rest is overthrown; this is only true where they are so far independent provisions, that it may be presumed that the legislature intended one to subsist, even though the balance perished. The principle is that where a particular clause of a statute is manifestly based upon certain other clauses which are pronounced unconstitutional, it will fall with them, though itself not obnoxious to constitutional objections."

Every doubt must be resolved and every presumption must be made in favor of the validity of an act of the legislature; but where a part of an act is inoperative on account of being unconstitutional, a different rule prevails in regard to the remainder of the act. " It is obvious," says Judge Cooley, " in any case where part of an act is set aside as unconstitutional, that it is unsafe to indulge in the same extreme presumptions in support of the remainder, that are allowable in favor of a complete act, when some cause of invalidity is suggested to the whole of it. In the latter case, we know the legislature designed the whole to have effect, and we should sustain it if possible; in the former, we do not know that the legislature would have been willing that a part of the act should be sustained, if the remainder were held void, and there is generally a presumption more or less strong to the contrary. While therefore, in one case, the act should be sustained unless the invalidity is clear; in the other, the whole, should fall, unless it is manifest that the portion not opposed to the constitution can stand by itself, and that in the legislative intent it was not to be contolled or modified in its construction and effect, by the part which was void." Cooley on Con. Lim., * 179, and note.

Now applying these rules and tests to the acts in question, it is readily seen that the removal of judges and chancellors before their terms expired, and redistricting the state, and increasing salaries, and changing the time for holding courts, and assigning judges and chancellors to new districts, are all parts of a common design, not wholly independent of each other, but based upon each other, and mutually connected with and dependent on each other, as conditions, considerations, inducements and compensations for each other, and operating together

for the same purpose, and that neither is complete in itself, sensible and capable of being executed, without the rest. I cannot presume that the legislature would have passed one part of these acts without the other, or that it intended that some parts of them should stand, though another vital part should fall. I know that the legislature designed that the whole should have effect. I do not know that it intended that only a part should have effect, or that the acts should take effect and operate in any other manner than that prescribed upon their faces, And if the acts are put into operation at all, it seems to me. that it will be questionable whether they are the acts of the legislature or of this court. It is plain to me, that the legislature contemplated that the acts should operate as a whole, and that they should take effect in all their parts at the time and in the manner specified in the acts, and not otherwise; and that there would have been no such redistricting, and increasing salaries, and changing the times for holding courts, and assigning judges and chancellors as provided for in the acts, if it had been supposed that judges and chancellors sought to be placed in a condition of salaried repose, would be judges and chancellors, with duties to perform, to the end of their terms, notwithstanding the acts.

The doubts that may exist as to when and for whom salaries are to be increased, if the emeritus judges and chancellors continue to act to the close of their terms; the uncertainty which must arise under the same circumstances, as to which judge or chancellor in some districts shall hold court, and as to whether some of the courts can or will be held for months and years in some of the counties, in one or more of the new districts, at the times designated in the acts, and the fact that the scheme would have operated without friction or confusion, if judges and chancellors could have been retired in the manner attempted, all proper to be considerd under the circumstances, to ascertain the legislative intent, are persuasive that the legislature would not have passed the acts as they exist, unless it intended them to operate as a whole, including the feature that some of the judges and chancellors were removed and put out of the way.

I find in the constitution limitations on the powers of the

legislature, as well as on the other departments of government, which are mandatory, but no provision to save a statute which violates that instrument.   There is nothing in the constitution which cures or removes the defects, or which enable any court to supply the essential qualities of an act of the legislature when it is in violation of the constitution.   I was not so brought up at the feet of the Gamaliels, nor so taught according to the perfect manner of the law of the fathers, as to be able to believe that any court in this land has power and authority to do any such thing.   In this, as in every other case of the construction of statutes and constitutions, I regard it rather as the province of courts to ascertain, if possible, from the whole and every part of the instruments considered together, the meaning and intention of the law-makers, and to be guided and governed by them, whether they lead to the maintainance of such instruments or to their overthrow.

But there is another view, from which these acts cannot, in my judgment, be put into operation, without violating the constitution.   After it is determined that judges and chancellors cannot be ousted from office in the manner provided by the acts, (and the opinion of the majority of the court holds that they are still judges and chancellors), if the acts are then maintained, it must result, that there are, and must be, for some time to come, two circuit judges and two chancellors in each, of several of the new judicial districts, and while all of them will be entitled to their salaries, only one half of them, to wit, those assigned by the acts to the new districts, will be required by law to perform the duties of the office.

I deny the authority of the legislature to create two judges and two chancellors, in the same district, in this manner, or to expend the public money to pay salaries to judges and chancellors who are such merely in name, and of whom no official duty is required.   It is against the spirit, the theory, and the purpose of the constitution, and of our institutions.   The constitution requires that judges and chancellors shall be appointed, to hold court, and to perform the gravest, the most important, and the most arduous of all public duties.   The law requires that they shall be paid, because the laborer is worthy of his hire.   Judges

and chancellors are, *ex vi termini*, public officers; but a judge or chancellor, without a court, and without a district, and without official functions to perform, cannot be brought within any legal definition of a public officer. He is to all intents and purposes a private citizen, with the rank and pay of a judicial functionary. Toleration of such legislation may not be detrimental to the public welfare in the present instance, but it will be a precedent which, in the changes of men and parties, may be invoked at pleasure, to depose any judge or chancellor, or to subvert the judicial system of the state as organized under the constitution, and even to establish a system of judicial pensions and bounties. And the precedent will be the more dangerous, because it holds out to judges and chancellors who may be in the way of others, the temptation of the state continuing to pay their salaries, if they will consent to accept it, and retire from office, and do nothing, and say nothing about it.