[Civil No. 1302.  Filed March 12, 1913.]

[130 Pac. 611.]

M. C. HIGH, Appellant, v. STATE OF ARIZONA, on the Complaint of W. G. GILMORE, Appellee.

1. JUSTICES OF THE PEACE—CONSTITUTIONAL PROVISIONS—TERM OF OFFICE.—Under constitution, article 6, section 1, making justices of the peace judicial officers, and article 7, section 11, fixing their term at two years, such term cannot be changed by the legislature.

2. OFFICERS—STATUTORY PROVISIONS—APPOINTMENT AND TENURE.—An office created by statute is wholly within the control of the legislature, and the term, method of appointment, and compensation may be altered at pleasure, and the compensation may be taken away without abolishing the office.

3. JUSTICES OF THE PEACE—CONSTITUTIONAL AND STATUTORY PROVISIONS—NUMBER.—Under constitution, article 6, section 9, providing that the number of justices of the peace to be elected in precincts shall be provided by law, Laws of 1912, chapter 42, section 1, approved May 16, 1912, amending Civil Code of 1901, paragraph 948, and paragraph 1051, so as to direct the board of supervisors of the several counties to redistrict their counties into precincts, and to provide one justice of the peace for each precinct, is valid.

4. OFFICERS—HOLDING OVER—GENERAL ELECTIONS—PRECINCT OFFICERS—CONSTITUTIONAL PROVISIONS.—The constitution having made no provision for the election of precinct officers until the first general state election, November, 1914, under constitution, article 22, section 6, providing that all . . . precinct officers shall hold office until their successors qualify, justices of the peace in office at the admission of the state into the Union hold their offices till the qualification of their successors elected at the general election in November, 1914, in spite of Laws of 1912, chapter 42, legislating them out of office on January 1, 1913.

5. CONSTITUTIONAL LAW—CONSTITUTIONAL PROVISIONS—OPERATION AS TO LAWS PREVIOUSLY IN FORCE.—All territorial laws not repugnant to the constitution are expressly kept in force until altered or repealed.

6. STATUTES—GENERAL AND SPECIAL LAWS—JUSTICES OF THE PEACE.—Constitution, article 6, section 1, makes a justice of the peace a judicial officer, and article 7, section 11, fixes two years as his term of office.  Article 22, section 6, provides that all precinct officers at the time of admission into the Union shall hold their respective offices until their successors have qualified; and article 6, section 9, provides that the number of justices to be elected in the precinct

shall be provided by law. The territorial laws (Civ. Code 1901) in force in the absence of constitutional or statutory provision as to the method of choosing the successors of precinct officers provide by paragaph 973, subdivision 2, that county supervisors may divide counties into such precincts as may be required by law, and change and create others as required, and by subdivision 17, that they may fill by appointment all vacancies in precinct offices. Laws of 1912, chapter 42, section 1, approved May 16, 1912, amending Civil Code of 1901, paragraph 948, directed supervisors to redistrict their counties into precincts, abolished all existing justice precincts, and terminated the offices of all existing justices of the peace. *Held,* that, as Laws of 1912, chapter 42, section 1, was not a general law delegating power to the boards of supervisors, it was unconstitutional.

7. JUSTICES OF THE PEACE—APPOINTMENT—POWER OF BOARD OF SUPERVISORS.—Boards of supervisors, as the chief legislative body of their respective counties, may, under the express provisions of Civil Code of 1901, paragraph 973, subdivision 2, and in the exercise of a proper discretion, change the precincts of their counties or create others as convenience requires, such changes to be made so as not to remove present incumbents, and in contemplation of an election when successors will be chosen.

8. STATUTES—PARTIAL INVALIDITY—EFFECT.—The unconstitutionality of Laws of 1912, chapter 42, section 1, approved May 16, 1912, amending Civil Code of 1901, paragraph 948, so as to direct county supervisors to redistrict their counties into precincts, does not render unconstitutional section 2, amending Civil Code of 1901, paragraph 1051, providing one justice of the peace for each precinct, since they are not dependent upon each other for validity, but treat of distinct and separable subjects.

APPEAL from a judgment of the Superior Court of the County of Cochise. Fred Sutter, Judge. Reversed.

The facts are stated in the opinion.

Mr. J. W. Ross, Mr W. B. Cleary and Messrs. Alexander & Christy, *Amici Curiae,* for Appellant.

Mr. W. G. Gilmore, County Attorney, and Mr. Alexander Murry, Deputy County Attorney, for Appellee.

ROSS, J.—This is an action in the nature of a writ of *quo warranto* instituted, on the relation of W. G. Gilmore, county attorney for Cochise county, against appellant, M. C. High. It is alleged that High was elected, at the regular November,

1908, election, justice of the peace of precinct No. 2 of Cochise county for the term of two years from January 1, 1909; that he qualified as such justice of the peace, and performed the duties thereof until January 1, 1913; that on September 3, 1912, the board of supervisors of Cochise county redistricted said county into justice precincts to take effect and be in force on the first day of January, 1913; that in the redistricting of said county precinct No. 2 was created with boundaries very much extended and enlarged over what was formerly known as "Precinct No. 2"; that precinct No. 2, as it existed at the time of appellant's election, was abolished by chapter 42, Laws 1st Legislature of Arizona, on August 15, 1912, to take effect on the first day of January, 1913, and that the term of office of appellant expired by law on the same date; that on January 3, 1913, Walter Thomas was appointed by the said board of supervisors to fill the vacancy in the office of justice of the peace in and for said precinct No. 2 so created by said board on September 3, 1912; that Thomas duly qualified and made demand of appellant for the possession of said office, which was refused; that appellant continues to usurp, hold, and exercise the said office to the exclusion of said Thomas.

The appellant interposed a general demurrer to the complaint. He also challenges the constitutionality of chapter 42, *supra*, and the action of the board of supervisors in its proceedings thereunder.

By our constitution (article 6, section 1) the judicial power of the state is vested in a supreme court, superior courts, justices of the peace and such courts inferior to the superior courts as may be provided by law.

The office of the justice of the peace is one of great antiquity, and because of its ready accessibility to all of the people and its expeditious dispatch of business and the informality of its proceedings many of the states of the Union have made it a constitutional office. It is made so by our constitution.

The law is well settled that when the term, qualifications, salary, or method of election of a judicial officer is prescribed by the constitution the legislature is incompetent to change, modify, or in any manner interfere with such requirements in the organic law, except as that instrument may allow. Coo-

ley's Constitutional Limitations, 388, and note. The same author lays down another equally well-settled rule that: "Where an office is created by statute, it is wholly within the control of the legislature. The term, the mode of appointment, and the compensation may be altered at pleasure, and the latter may be even taken away without abolishing the office."

Section 11, article 7, of the constitution, provides for biennial elections of state, county and precinct officers. This section, when construed in connection with the other provisions of that instrument, we think definitely fixes the term of office of justice of the peace to two years. This term of office is constitutional, and cannot be changed by the legislature.

Section 9, article 6, of the constitution, provides that "the number of justices of the peace to be elected in incorporated cities, towns and precincts . . . shall be provided by law." It was in pursuance of this power conferred on the legislature to provide by law the number of justices of the peace that chapter 42, as an amendment of paragraph 948 of chapter 1 and paragraph 1051 of chapter 3, title 14, Revised Statutes of Arizona of 1901, was enacted. The amended sections read as follows:

"948. (Sec. 21.) On the first Monday in September, 1912, the board of supervisors of the several counties of the state shall redistrict their counties into justice precincts; such redistricting of counties shall take effect and be in force on the first day of January, 1913, and all justice precincts, now in existence, are hereby declared abolished on and after the first day of January, 1913; and the terms of justices of the peace and constables, now in office, are hereby terminated on the first day of January, 1913."

"1051. (Sec. 124.) The officers of justices' precincts are one justice of the peace and one constable."

By this act the legislature has undertaken to prescribe the number of justices of the peace "to be elected in incorporated cities, towns and precincts" (1) by directing the boards of supervisors of the several counties to redistrict their counties into precincts, and (2) by providing one justice of the peace for each precinct. The legislature in doing this acted within the powers granted it by the constitution. But the act goes

further and abolishes all justice precincts and terminates the terms of office of all justices and constables in the state. All these officers had been chosen under the laws of the territory of Arizona, and in the transition from the territorial government to the state government no provision for the election of precinct officers was contained in the enabling act and ordinance No. 2; and hence none were elected in December, 1911, at the time state and county officers were chosen.

In *State* v. *Osborne, ante,* p. 185, 125 Pac. 888, 891, it was held that the constitution made no provision for the election of precinct officers until the first general state election; and that they would hold office until their successors are elected at that time and qualify.

The framers of the constitution, in order that the change of government might be effected without a suspension of any of its functions, provided, in section 6, article 22, that "all territorial, district, county and precinct officers who may be in office at the time of the admission of the state into the Union shall hold their respective offices until their successors shall have qualified."

As above stated, all state and county officers were elected in December, 1911, but not so as to precinct officers; they having their offices by virtue of section 6, article 22, *supra,* will hold until their "successors" qualify. The question is, How may these "successors" be chosen? Chapter 42 does not attempt to provide the method of filling the newly created precincts. We must therefore look to the territorial laws, for all of such laws, where not repugnant to the constitution, are kept in force until altered or repealed, and to the constitution itself.

Under the territorial laws (Rev. Stats. 1901, par. 973, subd. 2) boards of supervisors had power "to divide the counties into such districts or precincts as may be required by law, change the same and create others as convenience requires." Subdivision 17: "To fill by appointment all vacancies that may occur in county or precinct offices, except that of probate judge and supervisors."

Under statutes very much the same as ours, the courts of California have decided that boards of supervisors may alter, change, and erect new precincts, when "the growth of population of different parts of the state and the constant changes

therein make necessary frequent changes in the size of townships," and in doing so may abolish townships altogether But the laws of California, like the laws of the territory of Arizona, empowering the boards of supervisors to do these things were general laws, and left the duty of altering or erecting townships in the discretion of the boards of supervisors or local legislative body, as the necessities of the case arose. The right of the legislature to provide for such changes, the California courts say, is unlimited, except that it must be done through "the medium of general law, the practical result of which is that it cannot make these changes directly, but must do so by general laws delegating the power to the boards of supervisors or local legislative bodies of the respective counties." *Proulx* v. *Graves,* 143 Cal. 243, 76 Pac. 1025.

Chapter 42 requires the boards of supervisors to redistrict their respective counties on the first Monday of September, 1912. It may not be done at any other time. The boards of supervisors can exercise no discretion as to the necessity for redistricting their counties; and, unless authorized to do so by other provisions of the law, they will be powerless to readjust the precincts of their counties to meet demands of increased or changed populations.

Nor had the boards of supervisors the power or right to retain intact any precinct, however well suited to the conditions of population and business of their county. Regardless of all existent conditions of convenience and necessity, the legislature, in chapter 42, blotted out of existence every precinct in the state. It did not "provide for doing so through the medium of general laws," but did it directly. This, as we understand the California decisions, it could not do. It not only abolishes all the precincts in the state, but cancels the commission of every precinct officer of the state. These officers were chosen by the electorate, and the manner of their removal from office is provided by general law; but chapter 42 ignores the usual and regular procedure and attempts by this act to perform functions that properly belonged to the local legislative body.

Our conclusion is that section 948 of chapter 42 is violative of the constitution, and therefore null and void. Nevertheless, boards of supervisors, as the chief legislative body of

their respective counties, under paragraph 973, subdivision 2, Revised Statutes of 1901, may, in the exercise of a proper discretion, change precincts of their counties or create others, as convenience requires. Section 948 of chapter 42, in so far as it attempts to confer this power, adds nothing to the law as it already existed. The changes in precincts should be made, however, so as not to effect the removal of the present incumbents, but in contemplation of an election when successors may be elected.

Paragraph 1051, chapter 42, is not violative of our constitution; but it cannot have immediate force and effect, for the reason that section 9, article 6, grants power to the legislature to prescribe by law "the number of justices of the peace *to be elected,*" and not appointed. As we have already shown, justices of the peace cannot be elected until the general state election. It follows that those precincts with two justices of the peace will retain such officers until an election is had, at which time only one justice of the peace will be elected for each precinct.

Paragraphs 948 and 1051 of chapter 42 are not dependent upon each other for validity. They treat of subjects distinct and separable. The unconstitutionality of the one does not affect the other in any substantial degree. Cooley on Constitutional Limitation, at page 247, says: "If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained." *Price* v. *Anderson,* 65 Miss. 410, 420, 4 South. 96.

By the mere efflux of time all obstacles to the complete operation of paragraph 1051 will be removed, and until then its terms are suspended. *Price* v. *Anderson, supra.*

We feel that we ought to suggest that the scheme adopted in chapter 42 contemplates the obliteration of all precinct and township organizations heretofore existing in the territory and state and their complete reorganization. All precincts are abolished, and new ones are to be formed. This act makes no provision for the preservation of the files and records and property of the old precincts. Nor is there any general law covering the case. It is true the general law provides that outgoing officers shall turn over the records and files of their

offices to their "successors," and provides that the "successor" shall take jurisdiction of and dispose of unfinished business of his predecessor. But these new precincts and the officers thereof do not succeed any old precinct and its officers, and therefore are not entitled to the records and files of the abolished offices, nor to take jurisdiction of unfinished business.

Another infirmity in chapter 42, not, however, affecting its constitutionality, but exposing its impracticability, is this: Some of the boards of supervisors did not redistrict their counties on the first Monday of September, 1912, and did not take any steps whatever to comply with the terms of chapter 42. If, therefore, paragraph 948 is effective, such counties are without precincts, and without precinct officers to perform governmental duties and functions indispensable to the protection of society. Besides, every official act of such officers since the first day of January, 1913, has been without legal effect or force.

The judgment of the trial court is reversed and the case is remanded, with directions to sustain demurrer to complaint.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J., Concurring Specially.—I concur in reversing the judgment in this cause. My reasons therefor I wish to state briefly.

Section 1 of chapter 42 of the regular first session of the first state legislature, approved May 16, 1912, is attacked as in violation of the constitution. Said section 1 has for its purpose the amendment of paragraph 948, Revised Statutes of Arizona of 1901, and reads as follows:

"948. (Sec. 21.) On the first Monday in September, 1912, the board of supervisors of the several counties of the state shall redistrict their counties into justice precincts; such redistricting of counties shall take effect and be in force on the first day of January, 1913, and all justice precincts, now in existence, are hereby declared abolished on and after the first day of January, 1913; and the terms of justices of the peace and constables, now in office, are hereby terminated on the first day of January, 1913."

Paragraph 948, which the above purports to amend, reads as follows:

"948. (Sec. 21.) It shall be the duty of the board of supervisors, when not already done, to divide their counties into justice precincts and name the same."

Section 1 of chapter 42 recognizes that the counties are divided into precincts, and commands the boards of supervisors to redistrict their counties. This must be done by the boards on the first Monday in September, 1912, and the order so redistricting shall take effect on January 1, 1913. That far the language of the statute is clear, and the duty to be performed is unambiguous. The dates upon which the order of redistricting shall be made, and the date upon which the new districts shall become effective, are fixed and definite. Neither the order can be made nor become operative upon any other dates. All other dates not mentioned are excluded. 36 Cyc. 1122.

The section specifically abolishes all justices' precincts in existence at the date of the act, to take effect on the first day of January, 1913; and the terms of the precinct officers in office at the date of the passage of the law are declared abolished, to take effect on the first day of January, 1913.

We have held, in *State* v. *Osborne*, 125 Pac. 884, that the precinct officers were elected to hold their offices until their successors are elected and qualify, and that such successors cannot be elected until the first election held under and fixed by the constitution, viz., Tuesday after the first Monday in November, 1914, which holding we reaffirm.

The effort of the legislature, then, in the light of the Osborne case, *supra,* to abolish the precincts and to shorten the terms of precinct officers creates an ambiguity in section 1. A necessity therefore arises for a construction of the section.

"By the construction of a statute is meant the process of ascertaining its true meaning and application. For this purpose resort must be had not only to the language and arrangement of the statute, but also to the intention of the legislature, the object to be secured, and to such extrinsic matters as the circumstances attending its passage, the sense in which it was understood by contemporaries, and its relation to other laws." 36 Cyc. 1102.

It is the duty of the court to endeavor to carry out the intention and policy of the legislature. *Best* v. *Gholson,* 39 Ill. 465.

The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the legislature (36 Cyc. 1106, and cases cited in note 29) and the object intended to be accomplished by it.  36 Cyc. 1110.

In applying these rules to section 1 of chapter 42, *supra,* the clear intention of the legislature in passing the act was to provide new justice precincts in September that could be filled by an election held for such officers before the succeeding 1st of January.  This is more evident in view of the subsequent enactment of same legislature, passed at a subsequent session, calling and providing for an election for state, county, and precinct officers to be held on the first Tuesday after the first Monday in November, 1912.  Chapter 24 of the special session, approved June 14, 1912.  Had an election been legal if held in November, 1912, then the precinct officers holding office at the date of admission, and at the date chapter 42 was enacted, could have no complaint that their constitutional rights to hold office until their successors should have been elected and qualified have been violated.  The process of redistricting the several counties would in no manner affect their rights nor territorial jurisdiction.  In view of the subsequent enactment of chapter 24, *supra,* it is clear that the construction placed upon section 6 of article 22 of the constitution by the legislature was the correct construction, viz., that the precinct officers in office at the date the state was admitted into the Union were entitled to hold their offices until their successors were elected at an election legally held under the constitution and qualified under the laws.  It is clear that the legislature had no intention, when chapter 42, *supra,* was enacted, to shorten the terms of such officers, nor provide for the appointment of their successors.  It is equally clear that the legislature had no intention of redistricting any county, so that any precinct officer would be removed thereby from his office before his term expired.  The difficulty arises from the fact that no election could legally be held in November, 1912; and to give effect to chapter 42, *supra,* would be holding that the legislature had intentionally created vacancies in the precincts, to be filled by appointment, which is the reverse of the clear intention of the statute.  We would be legislating into this section of chapter 42 words to this effect: ''Justices of the peace and constables shall be appointed by

the boards of supervisors of the several counties to fill such offices in the several precincts created and effective on the first day of January, 1913.''

Section 9 of article 6 of the constitution commands the legislature to provide the number of justices of the peace ''*to be elected* in incorporated cities and towns and in precincts, . . . '' which is done by section 2, chapter 42, *supra,* The legislature has no power to provide the number of such officers to be appointed for each precinct. If the terms of precinct officers are made to commence on January 1, 1913, the next election could not be held for the election of their successors until November, 1914; thus a full term of two years is provided for to be filled, not by an election, but by an appointment. Such procedure would clearly be antagonistic to the policy of our laws and the evident intention of the legislature.

However, section 1 of chapter 42 is silent on the subject of the manner in which the precinct officers are to become entitled to qualify to fill the offices of the new precincts, whether by election or appointment; and as the constitution requires them to be elected to fill the precinct offices, when the legislature has prescribed the number for the precincts, we are not authorized to presume the legislature intended to violate the constitutional provisions and provide such a plan that would require their appointment, and not their election.

Section 1 of chapter 42 cannot hereafter become effective, as we have seen, because the time limit placed upon it by the legislature has expired, and we cannot fix another date by construction for evident reasons. It could not become effective upon the dates fixed, because by so doing the clear intention of the legislature would be thereby violated, and the clear terms of the constitution, as applied in the Osborne case, *supra,* would be nullified.

The judgment should be reversed and the cause remanded, with instructions to sustain the demurrer.

NOTE.—As to the nature and incidents of public office, see note in 63 Am. St. Rep. 181.

As to persons exercising official functions after expiration of term, see note in 140 Am. St. Rep. 178.